# John Wheeler *versus* Albert H. Guild *et al*

Where a person takes a promissory note transferable by delivery and not overdue or
otherwise apparently dishonored, for a valuable consideration, in the usual course
of business, and without actual or constructive notice that the holder has no right to
collect or receive it, his title thereto is valid, notwithstanding it may have been
lost by or stolen from the true owner, or deposited with such holder for a special
purpose without authority to collect or transfer it ; but otherwise the title of the
person so taking the note is not valid as against the true owner.

So, if a note is paid in full at maturity, by a party liable thereon, to a person having
the *legal* title to the note in himself by indorsement and the possession thereof, and
the party paying has no notice of any defect in the title of such holder, the pay-
ment will be good.

The plaintiff, who was the holder of a note, indorsed in blank, delivered it to B and
G, who were in partnership as attorneys, to be held by them as collateral security
for the payment of certain debts due from the plaintiff to B & G and other per-
sons ; and the note was placed among the private papers of G, by whom the busi-
ness was in fact transacted. Some time after the payment of the debts so secured,
but before the maturity of the note, the maker paid to B the amount due on the
note exclusive of interest, and took therefor a receipt signed by B alone, setting
forth that it was in full payment of the note, and that the note was to be delivered
up to the maker. It was *held*, that as the note was not in fact delivered up to the
maker, and as the right of B & G to transfer or collect the note ceased upon the
payment of the debts for which it was pledged, the payment to B did not operate
as a payment and discharge of the note ; and that the plaintiff might, notwith-
standing such payment, recover the amount thereof of the maker.

This was an action upon a promissory note dated Septem-
ber 1, 1833, for the sum of $500, made by the defendants, A
H. Guild & Co., payable to Daniel G. Wheeler junior, or or-
der, in three years, with interest, and indorsed by the payee in
blank.

The parties stated a case.

The payee became insolvent previously to March 1, 1834.
The plaintiff having paid debts and assumed liabilities on his
account, the note in question was indorsed and delivered to the
plaintiff before March, 1834. Before that time, the payee
being indebted to Brigham & Goodrich, Arthur Tappan & Co.
and Alexander T. Stewart & Co., a compromise was made of
these three debts, on March 1, 1834, and three several notes,
payable to Tappan & Co., Stewart & Co. and Brigham &
Goodrich, respectively, were made by Daniel G. Wheeler
junior and the plaintiff. To secure the payment of these
notes at their maturity, the plaintiff placed in the hands of

Brigham & Goodrich, to whom the notes of Tappan & Co. and Stewart & Co. had been sent for collection, the note now in suit and two other notes, to be held as collateral security; and Brigham & Goodrich gave a receipt therefor in the partnership name, setting forth that they had received them of the plaintiff and Daniel G. Wheeler junior, to be so held as collateral security.

The notes payable to Brigham & Goodrich, Tappan & Co. and Stewart & Co. were paid at maturity, and at some time previous to November, 1835, the last note having been paid on September 1, 1835. On the 22d or 23d of December, 1835, the plaintiff called on Goodrich, with whom the business had been transacted, for the notes thus left in pledge as stated in the receipt; and the note now in suit was produced from a file of private papers of Goodrich, where it had been kept by him; but as the plaintiff had not the receipt with him, the note was not delivered up.

Soon after this, to wit, about the 24th of December, 1835, Joseph Stafford, one of the firm of A. H. Guild & Co., called on Goodrich, presented a receipt in the following words, and demanded that the note now in suit should be delivered up to him:

"$500. Received of Joseph Stafford, five hundred dollars in cash, to pay a note A. H. Guild & Co., indorsed by Asa Cutler, payable to D. G. Wheeler junior, five hundred dollars for note being due September, 1836; said five hundred dollars has been received in full payment of the note, and the note to be delivered up to the said Stafford.

Nov. 28, 1835.                    D. T. BRIGHAM."

Goodrich objected to delivering up the note, because the business of Brigham was distinct from that of Brigham & Goodrich, and because Brigham had no right to discharge or receive payment of the note. Brigham being out of town, it was agreed between Stafford and Goodrich that the note, together with the receipt, should be placed in the hands of Ira Barton, Esq. in order to prevent it from being negotiated, and to save the rights of the parties till the matter could be adjusted; but this was not known to the plaintiff until afterwards; and the note was produced in court by Mr. Barton, at the plaintiff's request, no settlement having been made.

The plaintiff demanded payment of the note, after its maturity, of the defendants.

Brigham and Goodrich had been attorneys at law and partners for some years before 1835, and continued to be partners for some time afterwards, transacting business under the firm of Brigham & Goodrich. Brigham was very extensively engaged, during this time, in other business, on his own account. Goodrich performed the principal part of the office business ; and the receipt first mentioned was in his handwriting.

Brigham failed in the winter or spring of 1836 ; and the partnership was dissolved in June, 1836.

If the Court should be of opinion, upon these facts, that the plaintiff was entitled to recover, the defendant was to be defaulted ; otherwise the plaintiff was to become nonsuit.

*Washburn*, for the plaintiff. The note in suit was not paid by Stafford in the ordinary course of business, the payment being made before its maturity ; and such payment was not a valid payment and discharge of the note. After the payment of the note, for which it was pledged, Brigham & Goodrich's property in it ceased. Chitty on Bills, (5th ed.) 192, 358 ; Bayley on Bills, (Phillips & Sewall's 2d ed.) 330 ; *Kingman* v. *Pierce*, 17 Mass. R. 247 ; *Hatch* v. *Dennis*, 1 Fairfield, 251 ; *Ratcliff* v. *Davis*, Yelv. 178 and notes ; *Jarvis* v. *Rogers*, 15 Mass. R. 409 ; *Garlick* v. *James*, 12 Johns. R. 149 ; *Fisher* v. *Bradford*, 7 Greenl. 30 ; Story on Bailm. § 359 ; *Bleaden* v. *Charles*, 7 Bingh. 246. If the pledge had consisted of any other property than negotiable notes, it would not be contended that Brigham & Goodrich could have transferred it. It is true, that a negotiable note is distinguished from other property in this, that possession in the usual course of business carries the property with it. *Miller* v. *Race*, 1 Burr. 457 ; *Collins* v. *Martin*, 1 Bos. & Pul. 651 ; *Mason* v. *Waite*, 17 Mass. R. 563. But this distinction does not apply except where the note is actually delivered. *Peacock* v. *Rhodes*, 2 Dougl. 636 ; Story on Bailm. § 322 *et seq.* The note in suit was not given up to Stafford when he paid it ; and he had notice before the failure of Brigham, that he should not have paid it to Brigham. *Coddington* v. *Bay*, 20 Johns. R. 637, 655 ; *Bay* v. *Coddington*, 5 Johns. Ch. R. 54. The payment of a

Wheeler
*v.*
Guild.

*Oct. 5th.*

note should be made to the person having it in his possession with authority to receive payment. Brigham was not the holder of the note. It was among the private papers of Goodrich ; and the want of possession on the part of Brigham, was notice to Stafford that he paid at his peril. Bayley on Bills, (Phillips & Sewall's 2d ed.) 320 ; Chitty on Bills, (5th ed ) 358 ; *Kingman* v. *Pierce,* 17 Mass. R. 247 ; *Freeman* v. *Boynton,* 7 Mass. R. 483. The transaction between Stafford and Brigham was in fact a sale at a discount, and Stafford took as assignee and subject to the rights of the real owner. *Peacock* v. *Rhodes,* 2 Dougl. 636.

The payment to Brigham alone was not valid, the note having been deposited with Brigham and Goodrich. There can be no presumption, that it was a partnership transaction, as Stafford took a receipt in the name of Brigham alone. Gow, 61 ; *Etheridge* v. *Binney,* 9 Pick. 274 ; Collyer on Partn. 228, 229. This receipt shows, that the transaction was a mere personal executory contract between Stafford and Brigham.

If the note in suit had passed to a stranger without notice of such payment, he could have recovered upon it ; and there is no reason why the plaintiff should be bound by the transaction.

As Stafford extended confidence to Brigham alone, he should bear the loss, rather than the plaintiff.

*Allen* and *Barton,* for the defendants. The receipt given by Brigham & Goodrich shows, that the note in suit was placed in their hands as collateral security for the payment of notes lodged with them for collection, as attorneys. There is no evidence, that this right to hold the note in suit was ever transferred from Brigham & Goodrich to Goodrich alone ; and the Court cannot presume such a transfer merely from the circumstance, that the note was found among the private papers of Goodrich.

It is said, that the note was not paid in the ordinary course of business, as the payment was made before the maturity of the note. We contend, that the payment of a note before it is due, is as good as a payment after its maturity.

The plaintiff reposed confidence in Brigham & Goodrich originally, by depositing with them the note indorsed in blank

and subsequently by permitting it to remain in their hands a
long time after the notes for which it was held as collateral se-
curity had been paid.   The loss has been owing to this mis-
placed confidence, and it ought therefore to fall upon the
plaintiff.

SHAW C. J. delivered the opinion of the Court.   The
facts of this case present a very important question for the
consideration of the Court.   Whatever affects the negotiability,
and the free currency of promissory notes and bills of ex-
change, is of the utmost importance to a mercantile commu-
nity, the business of which is to a great extent transacted
through the medium of these instruments.

The facts which may be deemed material are these.   The
plaintiff became the holder of the note in question by regular
indorsement for valuable consideration, soon after it was made,
being a note dated September 1, 1833, payable in three years,
with interest, and the last indorsement being in blank.   With-
in a year from the date of the note, to wit, in March, 1834, the
plaintiff, John Wheeler, as surety, joined with Daniel G.
Wheeler in three promissory notes, one to Brigham & Good-
rich, attorneys and partners, in Worcester, one to Tappan
& Co. and one to Stewart & Co. of New York, for both of
which parties Brigham & Goodrich were agents and attorneys.
On that occasion, the plaintiff, John Wheeler, delivered to
Brigham and Goodrich, as collateral security to his three joint
and several promises, the note in question, indorsed in blank,
and took their receipt, specifying that it was so received, and
to be by them held, as collateral security for the payment of
those notes.   In September, 1835, these three notes had been
fully paid.   Though Brigham and Goodrich were in partner-
ship as attorneys at law, yet Brigham was engaged in much
other business, and had many separate negotiations, and the
business in question had been done in the partnership name,
but in fact by Goodrich.   In December, 1835, the plaintiff
applied to Goodrich for the note, who then produced and ex-
hibited it from a file of private papers, where it had been kept
by him, and he would then have given it up to the plaintiff,
but the plaintiff had not his receipt with him, to exchange for
it.   In the mean time, before this application of the plaintiff

to Goodrich, viz. on the 28th of November, 1835, Brigham had received of Stafford, one of the firm of A. H. Guild & Co. and one of the defendants, $500 to pay the note in question, describing it as a note payable in September, 1836, and gave him a receipt, in his separate name, signed D. T. Brigham, stating that the $500 had been received in full payment of the note, and the note to be delivered up to Stafford. Soon after the application of the plaintiff to Goodrich above stated, viz. about the 24th of December, Stafford, one of the defendants, producing Brigham's receipt, applied to Goodrich for the note, who declined giving it, on the ground that Brigham had no right to receive pay for, and discharge the note, and by mutual consent, it was placed in the custody of a gentleman, for the use of the party having the better title to it, by whom it was produced in this Court on the trial.

Some inferences are to be drawn from this evidence, which may have a bearing on the case ; but we think they are plainly deducible from the circumstances stated, and they are these ; that Goodrich did not assent to the payment received by Brigham, and did not in fact know of it till after he had been applied to by the plaintiff for the note ; that Goodrich had the actual possession and custody of the note, and that at the time that Brigham received the money and gave the receipt, he not only did not produce or exhibit the note, but that he had not the actual custody of it, nor was it so amongst the partnership papers, as that it was in the actual joint custody of the parties as partners. If he had it in his possession, or had regular access to it, in the ordinary way of business, there is no reason why he did not deliver it up to Stafford, instead of giving him a receipt, and a promise to deliver it.

The law in regard to bills of exchange and promissory notes, is so framed as to give confidence and security to those who receive them, for valuable consideration, in the ordinary course of business, when payable to bearer or indorsed in blank so as to be transferable by delivery ; and in general a party taking such a bill under such circumstances, has only to look to the credit of the parties to it, and the regularity and genuineness of the signatures and indorsements. So that if such a bill or note be made without consideration, or be lost or

stolen, and afterwards be negotiated to one having no knowledge of these facts, for a valuable consideration and in the usual course of business, his title is good and he shall be entitled to receive the amount. *Miller* v. *Race*, 1 Burr. 452 ; *Peacock* v. *Rhodes*, 2 Doug. 633 ; *Grant* v. *Vaughan*, 3 Burr. 1516. The credit which the law thus attributes to notes and bills of exchange which are transferable by delivery, arises mainly from the confidence inspired by the actual custody and possession, and the actual delivery of the security upon such negotiation. To so great an extent is this principle carried, that in regard to bank notes, and in most respects in regard to all other bills and notes transferable by delivery, the title and the possession are considered to be inseparable. And it will be presumed that the party thus in possession of a bill, holds it for value, until the contrary appears ; and the burden of proof is on the party impeaching his title. *Collins* v. *Martin*, 1 Bos. & Pul. 648.

But these rules are adopted with this limitation, that the party thus taking the note or bill, does it in the ordinary course of trade, when not overdue or otherwise dishonored by any thing apparent upon the face of it, and without notice that it had been lost or stolen, or that the holder had obtained it wrongfully, or had no just right to receive it in the way of business. *Paterson* v. *Hardacre*, 4 Taunt. 114. If one takes a note or bill with actual notice, that it has been lost by the owner, he cannot hold it against the true owner. *Lovell* v *Martin*, 4 Taunt. 799.

It has been argued, that where a party has a legal title by indorsement and delivery, and the actual possession of the bill or note, although he holds without any just right to negotiate or collect it, still as he has a legal title, a transfer from him will vest a legal title in another and authorize such other to take for his own use. But this consequence, we think, does not follow. The true ground is expressed by *Eyre* C. J., in the case above cited, *Collins* v. *Martin*. He says, " for the purpose of rendering bills of exchange negotiable, the right of property passes with the bills themselves. The property and the possession are inseparable. This was necessary to make them negotiable and in this respect they differ essentially

from goods." In another part of his judgment, in assigning the reason why a person thus having a legal title, may not enforce the collection of the bill, whether he has given value for it or not, he says, " If it can be proved that the holder gave no value for the bill, then he is in privity with the first holder, and will be affected by every thing that affects the first. This all proceeds upon an *argumentum ad hominem.* It is saying, you have the title, but you shall not be heard in a court of justice to enforce it against good faith and conscience." The same reasoning applies to other cases, where a party has the custody of a bill, without any just right or lawful authority to collect or negotiate it, as where it has been lost or stolen, or embezzled from the true owner, or intrusted to an agent, for a special purpose only ; if these facts are known to the party receiving it, he is in privity with the party from whom he receives it, and cannot be heard in a court of justice, though having a legal title to enforce an inequitable and unjust demand. Such a case is not within the reason of the rule, which is designed only to protect bills and notes, when taken in good faith, in the course of business. If a note is paid, not in the usual course of business, or to a person having the custody, but not authorized to receive payment, and that known to the party paying, though the note be given up, it is no discharge against the true owner. *Kingman* v. *Peirce*, 17 Mass. R. 247.

So, payment of a bill or check, before it is due, will not be a discharge, unless made to the real proprietor of it ; and therefore where a banker, contrary to usage, paid a check the day before it bore date, which had been lost by the payee, it was held, that he was liable to repay the amount to the person losing it. *Da Silva* v. *Fuller*, Sel. Cas. 238, cited in Chitty on Bills, (6th Engl. ed.) 148. In this case, although the holder had the legal title arising from the possession of the check, yet he was not *bonâ fide* the holder with authority to collect, and as the banker paid it out of the usual course of business, he paid it at the risk of being obliged to pay it again, if the party presenting it had not just right to receive it.

Most of the same principles and reasons apply alike to transfers and to payments. We think the rules deducible from the cases, are these : where a party takes a bill transferable by

deliver), not overdue nor otherwise apparently dishonored, for valuable consideration, in the usual course of business, and without notice, actual or constructive, that the holder came by it unlawfully or without title, and has no just right to collect and receive it, the party taking it shall hold it as a valid security, notwithstanding that it has been lost by the true owner, or stolen from him, or taken by the holder as a mere agent to keep, or for other special purpose, without any authority to collect or transfer it, otherwise he shall not be deemed to have a good title to hold and enforce payment of it, or to withhold the bill itself or the proceeds of it, from the party justly entitled. *Bleaden* v. *Charles*, 7 Bingh. 246. The same rule applies to payments ; if a bill be paid at maturity, in full, by the acceptor, or other party liable, to a person having a legal title in himself by indorsement, and having the custody and possession of the bill ready to surrender, and the party paying has no notice of any defect of title or authority to receive, the payment will be good. But in both cases faith is given to the holder, mainly on the ground of his possession of the bill, ready to be surrendered or delivered, and the actual surrender and delivery of it upon the payment or transfer. If therefore, upon such payment, the holder has not the actua¹ possession of the bill ready to be delivered, and does not in fact surrender it, but gives a receipt or other evidence of the payment ; and if it turns out that the party thus receiving, had not a good right and lawful authority to receive and collect the money, but that another person had such right, the payment will not discharge the party paying, but will be a payment in his own wrong ; he must pay the bill again to the right owner, and must seek his redress against the party receiving his money, on the pretence that he had a right to receive it as the holder of the bill, when in fact he had no such right.

Applying these principles to the present case, the Court are of opinion, that the payment made by Stafford to Brigham, under the circumstances, did not operate as a payment and discharge of this note, and that the plaintiff is entitled to recover.

The plaintiff was the holder of this note by indorsement, before it was pledged to Brigham and Goodrich, and had the

complete legal and equitable title to it, and the whole beneficial interest in it. Being transferable by delivery, when transferred to Brigham and Goodrich, they took the legal title, with a right to collect it, and apply the proceeds to the payment of the notes, for the security of which it was pledged, if they should not be otherwise paid. But when those notes were paid, all right of Brigham and Goodrich to transfer or collect it ceased, and they had the mere naked possession of it for the plaintiff, to be surrendered on demand. Now whatever might have been the effect of an actual surrender and delivery of this note to one of the promisers, on receiving payment, it is very clear, that according to all the rules applicable to this subject, without surrendering and delivering up the note, the payment must be considered as made at the risk of the party paying ; and as the party receiving, in fact had no right to receive payment, such payment and receipt did not discharge the note, as against the true owner. It is not necessary to consider whether Brigham was acting in his partnership capacity or not ; because after the purpose was accomplished, for which the note was pledged to the partners, they had no just right or lawful authority to transfer or collect the note, as against the plaintiff. If they had jointly transferred it in the due course of business, although their transfer without notice might have held it, it would be in virtue of the law which protects such transfers to a party without notice, in order to give effect to the currency of bills and notes, and not because Brigham and Goodrich had any right or lawful authority. If therefore they had given a transfer in writing with a promise to deliver the note, not delivering or producing it, no title would have passed as against the plaintiff, because such transfer without delivery, would not be within the reason or principle of the rule.

But we think the other point is equally decisive. Brigham not only did not produce or exhibit the note, but he had not the actual custody or possession of it. He did not profess to act for the partnership, but signed the receipt in his own name. Had Brigham and Goodrich as partners, been the true holders of the note, or if they had had a joint authority to collect it, it may well be admitted, that the act of one or the receipt of one would

bind both. But all the right and authority which they ever had over the note, except to give it back to the plaintiff, agreeably to their contract, had ceased. A receipt of one therefore in his own name and not purporting to be for the use of both, was not within the scope of the partnership authority, and did not bind his partner. The defendant Stafford gave credit to Brigham only. For though his receipt purports to be, not merely executory, but a present discharge of the note, yet as he had no authority to discharge it, either by himself, or for himself and partner, and as he had not the note to surrender and give up, the legal effect and operation of his receipt, was, an executory undertaking, that he would procure a discharge of the note and surrender it. The consequence is, that Stafford paid his money to the wrong person, and must look to him for an indemnity.

Besides, the note was not paid in the due course of business. It was paid many months before it was due ; the full sum was not paid, there being more than two years interest due on the notes, which was wholly relinquished ; no notice was given to Goodrich, the partner who transacted the business of taking these notes, and giving the receipt for them, and who had the actual custody of this note ; all of which would be strong evidence to go to a jury, to establish the fact of constructive notice to Stafford, that Brigham had no right, either in his own name or as a partner with Goodrich, to receive payment of, or to discharge this note. But the other grounds are sufficient, without relying upon these circumstances.

The grounds, upon which the Court place their judgment are these : The plaintiff had once a good title to the note. It was delivered to Brigham and Goodrich, for a special purpose, which was accomplished. After that, Brigham and Goodrich had a mere naked custody of the note for the plaintiff and had no right or lawful authority either to negotiate or collect it ; a fortiori, Brigham alone had no such authority. The defendant Stafford was not lawfully called upon to pay Brigham, as having the possession and custody with a primâ facie title, because he had no such custody or possession, and the note was not due. Stafford was not deceived into taking the note by the production and delivery of it, because it was not de-

Wheeler
*v.*
Guild.

livered or produced ; if he paid it therefore to Brigham, without having up his note, he did it on the faith that Brigham had good right to receive payment and discharge it, and of course under the liability to pay it over again to the rightful proprietor if Brigham had not such right. In fact and law, Brigham had no such right, but the plaintiff was at the time the rightful proprietor, and of course the defendants obtained no discharge by such payment, but upon the maturity of the note they were bound to pay it to the plaintiff. The note having been put by Mr. Goodrich into the hands of a common friend, for the use of the party entitled, and the plaintiff having shown himself entitled, the note was rightly brought in by the person to whom it was thus intrusted, as evidence for the plaintiff.

*Judgment for plaintiff.*