THE STATE OF MISSOURI, to use of J. B. R. LESPINASSE, Respondent, *v.* ROBERT MITCHELL, *et al.*, Appellants.

### March 7, 1876.

A purchased a lot of liquors at New York, and ordered them to be sent to B, at St. Louis, as his bailee. Before they reached St. Louis, he became distrustful of B, and, going to the express office, countermanded the direction to deliver them to B, but by mistake they were sent to B, notwithstanding. C, having a judgment against B, caused them to be seized on execution. A claimed the goods, but C disregarded his claim, gave bond, and held the property. B became bankrupt and the goods were taken by his assignee. *Held,* 1. That C was liable to A for the value of the goods taken. 2. That the circumstance of B becoming bankrupt had nothing to do with the relations between A and C.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*D. T. Jewett,* for appellants, cited : Cabanné *v.* Walker,

31 Mo. 286; Holliday v. Jones, 59 Mo. 482; —— v. Pacific
R. R. Co., 45 Mo. 237; Miller v. O'Brien, 9 Bank. Reg. 26.

*M. Kinealy* and *D. Dillon*, for respondent, cited: Brad-
ley v. Holloway, 28 Mo. 150; St. Louis & C. R. R. Co.
v. Castello, 30 Mo. 124; Hathaway v. Brown, 18 Minn.
414; Story on Sales, secs. 232-239; Baker v. Block, 30
Mo. 225: Beck v. Pollard, 55 Mo. 26.

GANTT, P. J., delivered the opinion of the court.

In this case, Lespinasse, in 1867, purchased a lot of
liquors in New York, and, having no room for their recep-
tion and custody, ordered them to be sent to Lefort, at St.
Louis.  Before they reached St. Louis, he went to the office
of the transfer company and ordered them to be delivered
to him; not sent to the store of Lefort.  By some mistake
of the agent the goods were sent to the store of Lefort,
and receipted for by one Franklin; and they were immedi-
ately seized by the sheriff (who had an execution in favor of
appellants) as the goods of Lefort.  The invoice and bill of
lading were made to Lespinasse.  The sale was effected to
him, and Lefort appears to have had no connection with the
goods at all, except that, for the convenience of Lespinasse,
it had been originally intended to store the goods tempo-
rarily with him.  Lespinasse claimed the goods in the hands
of the sheriff, whereupon defendants (now appellants)
executed the bond sued in this action.  The case was tried
before Judge Lindley, without a jury, at the December
term, 1873, of the St. Louis Circuit Court.  Besides the
aforegoing facts, it appeared that the goods were marked
with Lefort's name when seized; and that, proceedings in
bankruptcy being, in August, 1867, commenced against
Lefort, his assignee in bankruptcy took possession of the
goods which the sheriff had seized; and the estate of Lefort
would, in all likelihood, pay about 10 cents on the dollar
to his creditors.

The court declared the law to be that—

1. "If the court, sitting as a jury, believe from the evi-

dence that Lespinasse was the sole owner of the goods in controversy, at the time they were levied on in the attachment suit mentioned in plaintiff's petition herein, and at the time said Lespinasse claimed said goods as alleged in said petition, then the court will find in favor of plaintiff."

2. "If the court, sitting as a jury, find in favor of plaintiff, he will assess the damages in a sum equal to the value of the goods in St. Louis at the time they were levied on, and interest on the same, at the rate of 6 per cent. per annum, since the commencement of this action."

Defendant excepted, and asked the court to declare the law to be as follows:

" The court is requested to declare the law to be that, if the original defendant, Lefort, was adjudged and decreed a bankrupt, on petition of his creditors, in less than four months after the attachment of the property in controversy in the suit of *Mitchell* v. *Lefort*, and that proper and regular proceedings were had, in due time, to vest the title of said Lefort's property in the assignee, and that the proceeds of the sale of the property attached were, upon due proceedings, paid over by the sheriff of St. Louis county to the United States marshal, under orders of the United States District Court, then the attachment was, by operation of law, dissolved, and the question as to the ownership of the property transferred to the United States District Court, and this action cannot be maintained."

" The court is requested to declare the law to be that, if it is believed from the evidence in the case that the plaintiff, Lespinasse, had agreed with the original defendant, Lefort, to sell to him, Lefort, the liquors in controversy, when the same should arrive from New York, and that, in pursuance of such agreement, the said liquors were marked to Lefort, in New York, and shipped to him, and by the transportation company delivered at Lefort's place of business, as marked, before the attachment, then the said liquors had become the property of Lefort before the attachment, and this action cannot be maintained."

. The court refused these instructions, and defendant excepted.

1. The instructions given at the instance of the plaintiff were unexceptionable, and the appellant does not seek to controvert them in this court.

2. The second instruction asked by defendant was, we think, properly refused. There was no evidence whatever of any agreement on the part of Lespinasse to sell these goods to Lefort. All that is alleged or suggested by appellants, on this subject, is suspicion, wholly unsupported by proof. There is no inherent absurdity in the idea that such a sale was contemplated—that is, it would not be inconsistent with anything which appeared in this cause up to the time when Lespinasse went to the transfer company's office and ordered the goods to be delivered to him; not to Lefort. But there is absolutely *nothing* tending to show that such an agreement existed; and for this reason the instruction should have been refused, even if otherwise unobjectionable.

3. The third point—that the misfortune of Mitchell and others, in having the goods which they had seized upon and appropriated for the satisfaction of their claim against Lefort diverted to the general benefit of his creditors by the action of the United States District Court, operated to discharge Mitchell and others, and to substitute for them, as parties liable to the real owner of these goods, the assignee in bankruptcy—can hardly be seriously urged. Mitchell & Co. were guilty of a conversion of these goods, if they belonged to Lespinasse. If they belonged to Lefort, they were guilty of no conversion, but acquired a lien on the goods, which was divested by the proceedings in bankruptcy. In either case they would lose by those proceedings. If the goods belonged to Lefort, the priority they had acquired by their diligence—from which they might have reaped full satisfaction for their claim against him—would be defeated, and they would only have their dividend of his estate, on an equal footing with his other creditors. If the goods did not belong to Lefort, and did belong to

Lespinasse, they should have been delivered to the latter when he demanded them from the sheriff. That officer would have complied with this demand if the firm of Mitchell & Co. had not given the bond sued on in this case. That bond made the goods irrepleviable by Lespinasse, and was an absolute conversion of them, if they really had belonged to him. Lespinasse could not, we think, have claimed the property in the hands of the assignee after this bond was given; but, at any rate, he was in no sense bound to claim it, and it nowhere appears that he was a creditor of Lefort. Certainly he did not become such creditor through the appropriation of his (Lespinasse's) goods by Mitchell & Co. These last can no more set up the loss of the goods to them by the bankruptcy proceedings, as a reason for their exoneration from the claim of the real owner, than they could, for the same object, show that after taking the goods away they stored them in a building which was consumed by fire.

There is no error in the record. The judgment is affirmed, all the judges concurring.