THE FIRST NATIONAL BANK OF ARKANSAS CITY AND JAMISON VAWTER, *etc.*, v. G. C. GATES.

**No. 12,250.**   ( 72 Pac. 207.)

SYLLABUS BY THE COURT.

MUNICIPAL WARRANT—*Negotiability.*  A municipal warrant, although negotiable in form, is non-negotiable in fact. Therefore, a *bona fide* holder will not be protected by the law merchant in its purchase from one without authority to sell.

Error from Cowley district court; W. T. MCBRIDE, judge.  Opinion filed April 11, 1903.  Affirmed.

*Hackney & Lafferty,* for plaintiff in error bank.
*C. T. Atkinson,* for defendant in error.

The opinion of the court was delivered by

CUNNINGHAM, J.:  Vawter was president, and Blanchard cashier, of the Bank of Commerce of Newkirk, Oklahoma.   The defendant in error, Gates, gave to Blanchard a sum of money with which to purchase for him county warrants.   In accordance with this arrangement, Blanchard purchased a Kay county warrant for $500, and placed the same, together with other warrants belonging to Gates, in an envelope labeled as Gates's property and left it in the bank vault.   This warrant, together with others, was taken

by Vawter and pledged to the First National Bank of Arkansas City as security for a loan of $1000. It was, as is usual with county warrants or orders, negotiable in form. The Arkansas City Bank refused to return it to Gates upon his demand, who thereupon brought this action in the court below to recover for its conversion. He had judgment and the bank is here seeking a reversal.

Gates contended in the court below, and contends here, that the warrant in question was wrongfully taken by Vawter, and, as thereby Vawter obtained no title, he could transfer none to the bank. There was conflicting evidence as to whether the warrant had been wrongfully taken by Vawter, but as the jury found the issues in favor of Gates, it was established that he did thus take it. The bank, however, claims that having taken this warrant in the usual course of business for a sufficient consideration, without knowledge of Vawter's wrong, it is entitled to be protected by the law merchant. The question is, therefore, Is a county warrant, which is negotiable in form, but non-negotiable in the sense that the county issuing it may defend against it, nevertheless negotiable as between successive holders, so that a thief may vest title to it in a *bona fide* taker of it?

That one so acquiring ordinary commercial paper would be protected is not questioned. An innocent purchaser in good faith of commercial paper gets a good title, even though he purchase from a thief. (*Garvin v. Wiswell*, 83 Ill. 215; *Wheeler v. Guild*, 37 Mass. 545, 32 Am. Dec. 231; *Franklin Savings Inst. v. Heinsman*, 1 Mo. App. 336; *Hall v. Wilson*, 16 Barb. 548; *Seybel v. National Currency Bank*, 54 N. Y. 288; 13 Am. Rep. 583.) This is so because of the law merchant. Such paper is made free from defenses in the

hand of such holders in order to facilitate the circulation thereof and thereby promote the transaction of business.   But paper non-negotiable for any reason is not thus protected.   The very fact of its being non-negotiable is a sign of warning to the prospective purchaser and places him on his guard.

Municipal warrants, though negotiable in form, are non-negotiable in fact; hence, they are not within the protection of the rule which guards commercial paper.

The warrant in question being such an instrument, it was thereby, in the eye of the law, non-negotiable, though as to form, and in other respects, of a negotiable character; it, therefore, took its place in the list of non-negotiable paper for all purposes.   In other words, an instrument non-negotiable between the original parties remains non-negotiable through successive transfers.   The bank, knowing that it was non-negotiable, must take and hold it as it would any other non-negotiable paper.   Mr. Justice Bradley, in *The Mayor v. Ray*, 19 Wall. 468, at page 478, 22 L. Ed. 164, said :

"But every holder of a city order or certificate knows, that, to be valid and genuine at all, it must have been issued as a voucher for city indebtedness. . . .   He must take it, therefore, subject to the risk that it has been lawfully and properly issued. His claim to be a *bona fide* holder will always be subject to this qualification.   The face of the paper itself is notice to him that its validity depends upon the regularity of its issue."

This language was approved in *Wall v. County of Monroe*, 103 U. S. 74, 26 L. Ed. 430.   See, also, *Allen, Bethune & Co. v. McCreary et al.*, 101 Ala. 514, 14 South. 320 ; *Bank v. Bartlett*, 78 Cal. 301, 20 Pac. 682 ; *Clark v. Polk County*, 19 Iowa, 248 ; *Garfield Township v. Crocker*, 63 Kan. 272, 65 Pac. 273.   The bank got

no better title to this property than its assignor possessed, and, as Vawter had none, he could pass none to the bank.

In *People, ex rel., v. Johnson*, 100 Ill. 537, 39 Am. Rep. 63, a county issued an order on its treasurer for the payment of money. The payee indorsed it in blank and lost it. Johnson in good faith purchased it. The county issued a duplicate order to the payee, and the treasurer paid it. Johnson brought suit to recover on the order which he held. The court said (page 545) :

". . . Every one purchasing such paper is conclusively presumed to know that by his purchase he only acquires the rights of his assignor, whatever they may be, and whether there has been a written assignment or a mere transfer by delivery makes no difference in this respect." (See, also, *Young v. Brewster*, 62 Mo. App. 628.)

Inasmuch as the county warrant in question was non-negotiable, and Vawter had no authority to dispose of it, the bank took no title to, or interest in, it by receiving it as a pledge. The bank having disposed of it, Gates had a right to recover its value in an action for conversion.

Some other questions as to the giving of instructions and the admission of evidence are raised, but we find no merit in them.

The judgment of the court below will be affirmed.

All Justices concurring.