No. 26,512.

MARGARET P. BRIGGS, *Appellee*, v. THE BOARD OF TRUSTEES OF THE COMMUNITY HIGH SCHOOL, as Successor of the RENO COUNTY HIGH SCHOOL, of Reno County (the COMMUNITY HIGH SCHOOL, *Appellant*).

### SYLLABUS BY THE COURT.

MONEY RECEIVED—*Persons Liable—School District.* The treasurer of a school district sold warrants—valid upon their face, but void because they had been paid—to a purchaser in good faith, and deposited the money so received in his official account. *Held,* that the purchaser, upon learning of the invalidity of the warrants, may maintain an action against the school district for money had and received. And *further held,* when the court finds, in such an action, that defendant received plaintiff's money and had the beneficial use thereof, which findings are not objected to nor other findings requested, the plaintiff is entitled to recover.

Appeal from Reno district court; WILLIAM G. FAIRCHILD, judge. Opinion filed March 6, 1926. Affirmed.

*E. T. Foote, C. M. Williams* and *D. C. Martindell,* all of Hutchinson, for the appellant.

*Frank L. Martin* and *James N. Farley,* both of Hutchinson, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action for money had and received. It was tried to the court, who made findings of fact and conclusions of law, and rendered judgment for plaintiff. The defendant has appealed. The findings of fact tell the story of the controversy, as follows:

"1. The court finds that the defendant, the Community High School of Reno County, Kansas, is the successor of the Reno County High School.

"2. The court finds that on the 4th day of January, 1923, the plaintiff made and delivered to C. B. Copeland, who was then the treasurer of the Reno County High School and of its board of trustees, one check of that date for the sum of $1,491.21; that said check was indorsed by C. B. Copeland, 'For deposit only,' in the First National Bank of Mount Hope, Kan.; that the said C. B. Copeland, as treasurer of the Reno County High School delivered to the plaintiff warrants which had been duly executed and signed by S. P. Rowland as president, J. M. Wyman as secretary, and countersigned by C. B. Copeland as treasurer. True copies of said warrants and the indorsements thereon are attached to the plaintiff's petition, marked Exhibits 'B,' 'C,' 'D,' 'E,' 'F,' 'G,' and 'H'; that said check was cleared by the First National Bank

Money Received, 27 Cyc. pp. 849 n. 2, 882 n. 24, 883 n. 35. Municipal Corporations, 28 Cyc. p. 1570 n. 96; 7 A. L. R. 353.

of Mount Hope, Kansas, through its correspondent in Kansas City and was paid by the Citizens Bank of Hutchinson, Kan., and was charged to the plaintiff's account.

"3. That on the 5th day of February, 1923, the plaintiff made and delivered to C. B. Copeland a certain check for the sum of $1,505 on the Citizens Bank of Hutchinson, Kan. A copy thereof is attached to the plaintiff's petition, marked Exhibit 'I'; that said check was delivered to the said C. B. Copeland for certain warrants duly signed by the president and secretary of the Reno County High School and countersigned by the treasurer; and the same was indorsed by the said C. B. Copeland as treasurer of the Reno County High School, 'Not paid for the want of funds. This warrant bears interest at six per cent per annum.' A copy of the said warrants is attached to the plaintiff's petition and marked Exhibits 'J,' 'K,' 'L,' 'M,' 'N,' 'O,' 'P,' and 'Q'; that C. B. Copeland received the check from the plaintiff as treasurer of the Reno County High School, and on the 7th day of February, 1923, indorsed the same 'For deposit only,' in the First National Bank of Mount Hope, Kan., signing C. B. Copeland; that said check was cleared through the correspondent of the First National Bank of Mount Hope and was paid by the Citizens Bank of Hutchinson, Kan., and charged to the plaintiff's account.

"4. The court finds that C. B. Copeland was the duly elected treasurer of the board of trustees of the Reno County High School more than ten years before this suit was filed, and he was reëlected each year thereafter; that he was duly qualified and gave bond as required by law to the board of county commissioners of Reno county, as treasurer, for the sum of $10,000 and the premium was paid annually.

"5. The court further finds that C. B. Copeland as treasurer of the Reno County High School, for more than ten years kept an account at the First National Bank of Mount Hope, Kan.; that said account was kept in the name of C. B. Copeland; that he deposited therein large sums of money from time to time and transacted a large banking business with said bank; that with the exception of a very few items all of the deposits in said account were moneys received from the state treasurer, county treasurer, or from warrants of the Reno County High School or some transfers from the Citizens Bank of Haven, which transfers were made from an account carried in his name as treasurer of the Reno County High School; that C. B. Copeland also transferred funds from the First National Bank of Mount Hope to the Citizens State Bank of Haven, and the same were used in his official account in the Citizens State Bank of Haven. That the First National Bank of Mount Hope knew that Copeland was treasurer and that the funds he deposited were public funds.

"6. The court finds that after 1919 C. B. Copeland also kept an account at the Nickerson State Bank and that said account was kept in his name as treasurer; that he deposited in said account public moneys received for tuition and moneys from the state treasurer and the county treasurer, and one item of $2,500 in 1920 was transferred from the First National Bank of Mount Hope.

"7. That for more than four years before the said account was closed in

the First National Bank of Mount Hope, all the deposits there were either from the state treasurer, county treasurer or from warrants or transfers from the Citizens State Bank of Haven and from his account carried as treasurer in said bank.

"8. The court finds that the account carried in the First National Bank of Mount Hope in the name of C. B. Copeland was in fact the account of C. B. Copeland, the treasurer of the board of trustees of the Reno County High School; that from said account belonging to the Reno County High School he made checks and they were paid by the First National Bank of Mount Hope from time to time in due course of business, and the said checks were for the obligations and indebtedness of the Reno County High School and to transfer funds to the Citizens Bank of Haven for his account carried there as treasurer and to the State Bank of Haven for the private account.

"9. The court finds that the said account in the First National Bank of Mount Hope, while in the name of C. B. Copeland individually, was in fact his official account and for nearly the last four years of said account all of the funds deposited therein were public funds and belonged to the board of trustees of the Reno County High School.

"10. The court finds that the plaintiff gave the two checks heretofore described to C. B. Copeland, relying on his indorsement on the warrants described. The court finds that he was authorized by law to so indorse warrants, and that at the time he did so and at the time the plaintiff received the warrants, there was nothing on the warrants to indicate that they were not genuine. The signatures to the warrant were genuine; the indorsement of the payee was genuine, and there was nothing to indicate that the said warrants had been paid, and the plaintiff relying on the said warrants and the indorsement of the treasurer, paid to him the amounts represented by the checks, and he deposited the same in his account as public funds and the defendants thereby received the benefit of the said deposit.

"11. The court finds that in fact all of the said warrants had been paid by checks made direct to the payee on the Nickerson State Bank, except three of said warrants, which had been paid by checks on the First National Bank of Mount Hope, one of said warrants being for $451.67 and two of them for the sum of $180 each; but the court finds that the plaintiff had no notice nor knowledge thereof at the time she gave her checks to Copeland, as treasurer, for the said warrants.

"12. The court finds that C. B. Copeland, as treasurer of the Reno County High School, was allowed to and did with full knowledge and consent of the trustees, float and sell school warrants through banks and other sources in the sum of many thousands of dollars, for the purpose of raising funds to keep the school going.

"13. The court finds that during the last year that Copeland held the office of treasurer of the Reno County High School, he drew out of the account in the First National Bank of Mount Hope, Kan., items aggregating a total of $4,750 and deposited the same to his personal account in the State Bank of Haven, Kan.; and there was deposited to this account during the same time nearly $17,000 over $1,800 of which was represented by warrants which Copeland had discounted or cashed with the bank in accordance with the custom of handling school warrants which was used for school purposes.

Briggs v. Community High School.

"14. The court finds that C. B. Copeland defaulted and absconded in April, 1923, and that the last check on his account in the First National Bank of Mount Hope was in the date of April 2, 1923; that he was short in his accounts a sum aggregating more than $17,000 without taking into account the amounts obtained from the plaintiff; that his defalcations began in 1913; that during his term of office he gave a bond of $10,000 and the same was renewed from year to year; that at the time he disappeared, about April 1, 1923, he had been reappointed for that year and had paid the premium on his bond for $10,000; that since his default the board of trustees of the Reno County High School have collected the full penalty of the bond, to-wit: The sum of $10,000.

"15. The court finds that C. B. Copeland as treasurer, and in his official capacity, received the money from the plaintiff for all the warrants described in her petition, being the sum represented by the two checks, and while acting in his official capacity, and that he deposited the same in the First National Bank of Mount Hope to his account which he kept there, which was his official account as treasurer of the Reno County High School, and that the board of trustees of said school and said school received the amounts represented by the plaintiff's checks."

The defendant moved to set aside findings numbers 12, 13 and 14 as not sustained by the evidence. This motion was overruled. Defendant then moved for judgment in its favor upon the findings, and this was overruled. Upon these findings the court concluded, as a matter of law, that plaintiff should recover, and rendered judgment accordingly. Defendant's motion for a new trial was overruled.

Municipal warrants, while so far negotiable that they are transferable by delivery, or by indorsement and delivery, and the holder may maintain an action thereon in his own name, are not negotiable instruments in the sense that term is used in the law merchant. Even in the hands of a purchaser for value, evidence of their invalidity, or defenses against the original payee, will not be excluded. (28 Cyc. 1570; *Bank v. Gates*, 66 Kan. 505, 72 Pac. 207.)

It is argued there was no evidence to support findings 12, 13 and 14, but an examination of the record reveals ample evidence to support the findings. Appellant argues that its officers had no legal authority to float warrants, *i. e.*, to sell them to banks or investors, and thus obtain money to use in paying expenses of conducting its school, and the fact that they had done so in the past gave no validity to such practice. For the purposes of this case this may be conceded, since the action is not upon the warrants.

Counsel on both sides argue the question whether the warrants had any validity at the time they were purchased by plaintiff. In this connection it may be observed it was the duty of the treasurer

of the school district, on presentation to him, to pay any warrant properly drawn on any fund in his custody by virtue of his office, and when paid to write across the face of such warrant the word "Paid" in red ink and sign the same. (R. S. 10-806.) If moneys in his hands were not sufficient to pay the warrant, it was his duty to indorse thereon a proper registered number and the words "Presented and not paid for want of funds." (R. S. 10-807.) In this case the warrants bore the latter indorsement. If this were an action upon the warrants, the fact that they were so indorsed, and the method of handling these warrants, and previous groups of warrants, as shown by the evidence and found by the court, might have justified a finding that the warrants had not been paid. (*Bardsley v. Sternberg,* 18 Wash. 612; *Manitou v. First Nat. Bank,* 37 Colo. 344; *Fidelity & Deposit Co. v. City of Cleburne,* 296 Fed. 643, 648.) But this doctrine cannot be applied in this case for two reasons: (1) The action is not brought upon the warrants, and (2) the trial court found that the warrants had been paid.

This is an equitable action for money had and received, and is predicated upon the theory that defendant received money from plaintiff for warrants valid upon their face, but void in fact (because they had been paid previously), which in equity and good conscience defendant should not retain, but should repay to plaintiff. That such an action will lie, in a proper case, is conceded by appellant and is sustained by ample authority. (27 Cyc. 849 *et seq.,* and cases there cited.) The only controversy here is whether plaintiff has made a sufficient showing to be entitled to such relief.

Appellant argues that plaintiff's money was not paid to the school district and that the school district did not receive the money; that the account of C. B. Copeland in the First National Bank of Mount Hope was his personal account and not his account as treasurer of defendant. Upon this point it is sufficient to say the trial court found against the appellant, and that the finding is supported by ample evidence.

Appellant argues that, even if plaintiff's money reached the treasury of defendant, it is not shown that it was used for any proper purpose of defendant, or that defendant had any beneficial use thereof. It may be questioned whether appellant is in position to raise this question. The trial court found that defendant "received the amount represented by plaintiff's checks" (No. 15) and "received the benefit of the said deposit" (No. 10). Defendant moved

to set aside findings numbers 12, 13 and 14 as not being supported by the evidence, but made no such motion as to findings 10 and 15. This indicates that, in the trial court, defendant in effect conceded there was sufficient evidence to support findings 10 and 15. But, passing that question, the rule as to proof in such cases is thus stated:

"The burden is on plaintiff to prove that the money has been received by defendant. . . . If money of plaintiff is shown to have come into the hands of defendant, the burden is on defendant to show how he disposed of it. If any facts exist which take the case out of the general rule and exempt defendant from liability, the burden is on him to show these facts." (27 Cyc. 882.)

Turning to the cases, there is a respectable line of authority to the effect that when plaintiff shows defendant received his money under circumstances which make it inequitable for him to retain it, the plaintiff is not concerned with what the defendant has done with it. (*Long v. Lemoyne Boro., Appellant,* 222 Pa. St. 311; *City of Henderson v. Redman,* 185 Ky. 146.) But, as to public corporations at least, the better rule and the greater weight of authority seems to be, that it is not liable when it is shown that, even though the money reached its treasury, it was not used for any lawful purpose of the corporation. (See annotation and cases collected on this point, 7 A. L. R. 353.) There are also cases holding that, when a defaulting treasurer of a public corporation obtains money from one who in good faith pays it to him upon warrants valid on their face but void in fact, which money is placed in his account as treasurer, and this was done and the money used to cover his defalcations, the corporation is not liable. (*Brown v. Newburyport,* 209 Mass. 259; *Ogren v. Crystal Springs School Dist. No. 29,* 203 N. W. 324 [N. D.].) The difficulty of applying here the doctrine of these cases is this: The court did not find that the money, after it reached the treasury of defendant, was abstracted by Copeland for his own use, neither did the court find that the money was obtained from plaintiff and placed in defendant's treasury by Copeland to be used, and was in fact used, to cover his defalcations. And defendant requested no findings to that effect. The findings of the trial court are not consistent with such theory, but are opposed to it, and are that defendant received plaintiff's money and had the beneficial use of it, and no motion was made to set these findings aside.

If we pass the question of findings and look to the evidence, we

find this: On January 6, 1923, defendant had a balance of $87.62 to its credit in its account in the First National Bank of Mount Hope. On that day Copeland deposited the first of the two checks received from plaintiff, $1,491.21; on January 23 he deposited $2,-390.92 received from the county treasurer; on February 8, the second check from plaintiff, $1,505, and on March 23, $839.50 from the state treasurer, making total deposits, and credit, of $6,314.25, before he absconded in April. The checks for the withdrawals were not available, but the bank books indicate that, roughly speaking, about half of this money was used to pay proper current expenses of defendant and about half of it was transferred, by several checks, to Copeland's personal account in another bank for his personal use. But Copeland had five separate bank accounts, and without the checks or his testimony it is difficult to tell accurately what went to his personal use. It is also difficult to tell whether Copeland used money received from plaintiff to pay proper expenses of defendant, and appropriated to his own use money received from the county treasurer and the state treasurer, or *vice versa*. The bank books would indicate that he used it without discriminating the source from whence it was obtained, and hence that a part of the money obtained from plaintiff was used for the legitimate purposes of defendant, and a part of it was not so used, but it would be difficult indeed to determine just how much was used either way. The small balance in the bank at the time Copeland absconded was claimed and received by defendant. Copeland had been reëlected treasurer the first of January, 1923, and gave his bond for $10,000. Defendant made a claim upon this bond and it was paid in full, and the proceeds used for its lawful purposes. Copeland's defalcations in 1923 were much less than $10,000, hence defendant was fully reimbursed for all abstractions or embezzlements of Copeland for that year. Considering all that, it is difficult to say, even if the question were open for our determination, that the trial court had no evidence upon which to base a finding that the defendant received the benefit of the payments made by plaintiff. It is the rule in this court not to reverse cases unless it is clear there was error in the trial court, and that cannot be said in this case.

The judgment of the court below is affirmed.