80    289
e213  ¹480

JOSEPH W. TAFT *et al.*

*v.*

FREDERICK SCHWAMB.

1. PARTNERSHIP—*title and interest of partner in capital stock.* Each partner has a joint interest but not a separate interest in any particular property of the partnership, and each has a moiety or the same species of interest in the stock in trade, whether each contributes exactly in the same proportion or not; but their several degrees of interest must be regulated according to the stipulated proportions and the different conditions of the partnership. Neither partner has any exclusive right to any part of the joint effects for any sum due him until a balance of account be struck.

2. SAME—*articles construed as to ownership of property used.* Where articles of partnership provide that one partner is to put into the capital stock a building and machinery valued at $9615, and the other two to put in $2500, making a total capital stock of $12,119, and to pay the other interest on the excess put in by him, each partner will have a joint ownership of the building and machinery; and a provision that "losses in all business transactions during said partnership" shall be borne, one-half by the first and one-fourth by each of the others, will not change the rule.

3. Partners may, by contract, stipulate that the ownership of property may remain in one, while the firm shall have only the use of the same, as between themselves, or any other regulation in regard to ownership of the property used, not prohibited by law.

4. Where, by articles of partnership, it was recited that one had put into the capital stock property on hand of the value of $9615, and the other two were to put in $2500, making a total capital of $12,119, and it was provided that the two last should pay the first interest on the excess put in by him, and the losses in business and profits should be divided one-half to the first and the other half among the other two, and further provided that the partnership might be renewed when the term expired, and in that event the partners should become equal owners in the capital stock, which was done

19—80TH ILL.

by indorsement on the original articles: *Held*, that each became an equal owner, and the property put in by the first having been destroyed by fire, the loss should be borne equally by all.

5. EVIDENCE—*parol, to vary written articles.* Where articles of partnership showed, by their legal effect, that the interests of the several partners were equal in the whole capital stock, including a house and machinery put in by one, in the absence of any allegation in the pleadings showing fraud or mistake, it was *held*, that parol evidence to show that the parties intended their interests should be different, was properly excluded.

6. INTERLOCUTORY DECREE—*its effect on final hearing.* On bill to construe articles of partnership and for an account, the court, in an interlocutory decree determining the rights of the parties under the contract and fixing the basis upon which the account should be taken, found, without proof, that the building, machinery, etc., had been burned: *Held*, that the error was immaterial, and could not prejudice either party on the final hearing, and such finding might have been wholly omitted without affecting the case.

7. COSTS—*in chancery.* Where two partners deny the proper construction to be given to articles of partnership, and refuse to settle upon the proper basis, so that the other partner is compelled to file a bill to have the contract construed and for an account under such construction, there is no error in requiring the defendants to pay all the costs.

APPEAL from the Superior Court of Cook county; the Hon. SAMUEL M. MOORE, Judge, presiding.

This bill is filed for the purpose of obtaining a construction of the articles of co-partnership between the parties, and for an account.

Business was commenced and prosecuted until the 1st day of January, 1869, under the following:

"Articles of agreement made this 30th day of November, in the year of our Lord 1867, between Fred. Schwamb, of the city of Chicago, county of Cook, State of Illinois, of the one part, and J. W. Taft and D. R. Crego, of the same place, of the other part, witnesseth as follows:

"The said parties above mentioned have agreed to become co-partners in business, and by these presents do agree to be co-partners together, under and by the firm name and style of Taft, Schwamb & Crego, in the business of manufacturing and selling picture frames, mouldings, house trimmings, turning, scroll-sawing, and all other work they may mutually agree to

do, and in the buying and selling and vending all sorts of goods, wares, merchandise and commodities to the said business belonging, and to occupy as a manufactory, premises known as No. 490 South Canal street, in the city of Chicago, or such other place or places as they, the said co-partners, may deem advisable. This co-partnership to commence on the 28th day of November, A. D. 1867, and to continue for the term of thirteen months and three days, ending on the 31st day of December, A. D. 1868, and to that end and purpose the said parties above named have each delivered in as capital stock as follows: Fred. Schwamb, the building known as No. 490 South Canal street, and all machinery, including engine, boiler, tools, benches, lumber, all manufactured stock and that under process of manufacture, now in his possession, supposed to be worth say $9,619.37, the same to be determined by an inventory.

"And the said J. W. Taft and D. R. Crego shall put in as capital stock the sum of $2500, making a total capital stock of about $12,119.37, to be used and employed in common between them for the support and management of the said business, to their mutual benefit and advantage.

"And it is further agreed between the parties to these presents, that the said firm of Taft, Schwamb & Crego shall pay interest, annually, to F. Schwamb, on the sum of $7,119.37, or on what he may have in excess of said Taft and Crego's investment.

"And it is agreed by and between the parties to these presents, that at all times during the continuance of this co-partnership, Taft and Schwamb will give their attendance, and to do their and each of their best endeavors, and to the utmost of their skill and power exert themselves for the joint interest of the company, unless Taft's trunk business should require some of his time; if so, then Crego will spend as much of his time for the firm of Taft, Schwamb & Crego as Taft spends for the firm of Crego & Taft.

"And it is also agreed, that they shall and will, at all times during said co-partnership, share, bear, pay and discharge be-

tween them, each his share of all rents and other expenses that may be required for the support and management of the said business, and that all gains, profits and increase that shall come, grow or arise from or by means of their said business, shall, after paying the expenses as aforesaid, be divided between them, the said co-partners to receive their shares as follows: F. Schwamb to receive one-half of all gains or increase, or if the business has been done at a loss, then F. Schwamb to pay one-half of all such losses; J. W. Taft to receive one-fourth of all gains or increase, or to stand one-fourth of all losses in all business transactions during said co-partnership; D. R. Crego to receive one-fourth of all gains or increase, or stand one-fourth of all losses in all business transactions during said co-partnership.

"And it is further agreed by and between said parties, that there shall be had and kept, at all times during the continuance of this co-partnership, perfect, just and true books of account, wherein each of said co-partners shall enter and set down, as well all money or moneys he, they or either of them receive, pay out, and expend in and about the said business; also all goods, wares, commodities and merchandise by them, or either of them, bought or sold by reason or on account of said business, and all articles by them manufactured, and all other matters and things whatsoever to said business and management thereof in any way belonging; which said books shall be used in common between the co-partners, so that either of them may have access to them without any interruption or hindrance of the others, which said books of account shall be balanced once in each month; and also said co-partners, twice in each year during the continuance of the said co-partnership, or oftener, if deemed necessary, shall make, yield or render, each to the other, a true, just and perfect inventory and account of all the profits and increase by them made, and also of all payments, receipts and disbursements, and of all other things by them made, received, or losses in said business, and the said account being so made, they shall and will adjust, pay and

deliver, each to the other, at the time, their just share of the profits so made as aforesaid.

"And it is further agreed between said parties, that neither of said co-partners shall draw out of the co-partnership funds a sum of money exceeding as follows: F. Schwamb, $25 per week; J. W. Taft, $12.50 per week; D. R. Crego, $12.50 per week, during the continuance of said co-partnership, for his own profit or purpose, without the consent of the others of said co-partners first had and obtained thereunto.

"And the said parties hereby covenant and agree to and with each other, that, during the continuance of their said co-partnership, neither of them shall or will indorse any note, or otherwise become surety for any person or persons, without the consent of the others of said co-partners.

"And it is further agreed between the said parties, that if, at the expiration of said co-partnership, said Taft and Crego shall wish to continue in said co-partnership, and become equal owners in the capital stock, they can do so upon a renewal of said co-partnership. The tools, fixtures and machinery shall be put in at a discount of ten per cent from the present inventory price.

"And it is further agreed between the said parties, that if, at the expiration or other determination of said co-partnership, said co-partners, each to the other, shall and will make a true and just account of all things relating to their said business, and in all things truly adjust the same, if said Taft and Crego should wish to retire from said co-partnership, they shall give to said F. Schwamb sixty days' notice to that effect, and at the end of the said sixty days they shall have the privilege of drawing out their investment, with the gains or profits in money or its equivalent, the amount of said investments and profits to be determined by an inventory, as upon the beginning of this co-partnership, everything to be inventoried at cost price and improvements added.

"In witness whereof, the said parties to these presents have

hereunto set their hands and seals the day and year first above mentioned.

"JOSEPH W. TAFT,          [seal.]

"FREDERICK SCHWAMB,    [seal.]

"D. R. CREGO."          [seal.]

On the first of January, 1869, the following was indorsed on the foregoing recited articles of co-partnership:

" By mutual consent, the above agreement will continue until January 1, 1871, with the exception of the interest of the partners, each partner's interest to be equal; that is, each one to have one-third of all profits, if any, and stand one-third of all losses in all business transactions during the continuance of this contract, the amount drawn out by each partner to be equal.

"J. W. TAFT,

"FREDERICK SCHWAMB,

"D. R. CREGO."

Business was continued under this last mentioned agreement until March 3, 1870.   On the 9th of August, 1869, the building, machinery, etc., were destroyed by fire.

The interlocutory decree rendered by the court, is as follows:

" This cause coming on to be heard upon the pleadings, and proofs taken herein, and after hearing the arguments of counsel for respective parties, it is ordered, adjudged and decreed, and the court, by virtue of the authority therein vested, doth find, order, adjudge and decree that the written contracts of partnership between the parties to this suit, referred to in the bill of complaint herein, and copies of which are annexed as exhibits to said bill, were duly executed by the parties to this suit, and bear date respectively, November 30, 1867, and January 1, 1869.   That after the execution of said partnership contracts, and on 9th day of August, 1869, the building known as Number 490 South Canal street, and all machinery, including engine, boiler, tools, benches, particularly described in said first named written contract of co-partnership, were destroyed by fire, and but a small amount was realized from the policies of insurance placed upon said property.

"And said court doth further adjudge and decree, that, under and by virtue of the said written contracts of co-partnership between the parties, and under which the business of the co-partnership therein mentioned was carried on, the property aforesaid was, at the time of its destruction by fire, the joint property of the defendants, as partners, composing the firm of Taft, Schwamb & Crego, and that the loss thus occasioned was the loss of the said firm of Taft, Schwamb & Crego, to be borne and shared equally between the said complainant and the two defendants, Joseph W. Taft and David R. Crego, that is to say, Frederick Schwamb, the complainant, to bear one-third of the said loss, said Joseph W. Taft to bear one-third, and said defendant, David R. Crego, one-third of said loss; and said court doth further order and decree, that the affairs and accounts of said co-partnership, prior to the first day of January, A. D. 1869, be adjusted in the manner in said contract of the 30th of November, A. D. 1867, specified, and the losses and profits accruing prior to said first day of January, A. D. 1869, be divided as follows, namely: Complainant to receive one-half of all gains or increase, and to pay one-half of the losses, said defendant Joseph W. Taft, and said defendant D. R. Crego, each to receive one-fourth of all gains or increase, and each to bear one-fourth of the losses; and the accounts in other respects relating to the business prior to January 1, 1869, to be adjusted as in said first named contract provided. And it is further ordered and decreed, that the business matters of said partners, and accounts and transactions arising after the first day of January, A. D. 1869, shall be adjusted as follows, namely: Said complainant to receive one-third of the profits of said business done after the first day of January, 1869, and to share one-third of the losses sustained in said business by said firm, including said loss of said property by fire, and that said Joseph W. Taft and D. R. Crego shall each, respectively, receive one-third of all profits and bear out one-third of the losses sustained by said firm after the first day of January, 1869, during the continuance from that date of said partnership.

296      TAFT *et al. v.* SCHWAMB.     [Sept. T.

Statement of the case.

" And said court doth further order, adjudge and decree, that the profits, losses, rights and liabilities of said parties, pertaining to said business, and the property embarked therein, be determined, and the accounts of the respective partners adjusted in accordance with the rule above declared and the terms of this decree, and that this case be referred to Benjamin D. Magruder, master in chancery, to take the proofs and state an account between the parties to this suit upon the basis above named and in conformity with this decree, and report the same, together with the evidence, to this court."

The final decree on the master's report is as follows:

" This cause coming on to be heard upon the master's report in this cause, of date July, A. D. 1875, made in pursuance of the interlocutory decree of reference in this case heretofore made, and upon the evidence contained in said report, and after hearing counsel for the respective parties, and the case being mutually submitted by said parties by consent upon said report and evidence to said court for decision, and said court being fully advised in the premises, doth order, adjudge and decree, and find, by virtue of the authority in said court vested, that the resources and property of said firm of Taft, Schwamb & Crego, consisting of Joseph W. Taft, Frederick Schwamb, and David R. Crego, on the first day of March, A. D. 1870, amounted to $30,150.99, consisting of the following items, namely:

| | |
|---|---|
| Cash | $132.40 |
| Merchandise | 6,073.00 |
| Tools and fixtures | 12,257.83 |
| Real estate | 10,838.49 |
| Bills receivable | 849.27 |

" That the debts and liabilities of said firm, except the shares due to said partners, were, on or before March 1, A. D. 1870, all paid, and that of the above mentioned assets said Joseph W. Taft was, on the 1st day of March, A. D. 1870, entitled to the sum of $15,123.12.

"That, at the same date, said Frederick Schwamb was entitled, out of said assets, to the sum of $10,519.73, and that David R. Crego was, at the same date, entitled, out of said assets, to the sum of $4,508.14, which right or share of said D. R. Crego was, on or before March 1, A. D. 1870, by him assigned to said Joseph W. Taft, who now owns the same. That the real estate aforesaid is held by said Taft and Schwamb by deeds in fee simple absolute, two-thirds by said Joseph W. Taft, and one-third by said Frederick Schwamb, and that, by virtue of said deeds, they have received, on or before March 1, 1870, respectively, the following sums, namely: said Taft the sum of $7,225.66, leaving his share of the personal property, including said share of said Crego assigned to said Taft, $12,405.63; and said Frederick Schwamb the sum of $3,612.83, leaving his share of the personal property to be divided $6,906.90; and that since said first day of March, A. D. 1870, no settlement or adjustment of said accounts has been had between said parties, but the same remain to be adjusted upon the above basis.

"Said court doth further order and find, that said Joseph W. Taft and Frederick Schwamb, in paying off the debts of the firm of Taft, Schwamb & Crego, which were assumed by Taft and Schwamb, and credited to them in their account with Taft, Schwamb & Crego, gave their individual notes and mortgage, executed in the name of Joseph W. Taft and Frederick Schwamb, respectively, to Ellis C. Taft, for the sum of $3,966.67, and ten per cent per annum interest thereon, dated February 26, A. D. 1875, which, by agreement between said Joseph W. Taft and Frederick Schwamb, was to have been paid by them equally, and which, if still outstanding and unpaid, said Joseph W. Taft and Frederick Schwamb are equally bound to pay, and said court doth order and decree that said indebtedness shall be paid by said parties equally.

"And this court doth further adjudge and find, that the transactions of the firm of Taft, Schwamb & Crego are closed, leaving the accounts at the date aforesaid as already stated;

and that no adjustment has been made of the same since that date.

"And this court, by virtue of the authority therein vested, doth further order, adjudge and decree that the several sums and shares aforesaid, the several partners aforesaid are severally entitled to receive out of the assets of said partnership of Taft, Schwamb & Crego; and in case the property of said firm, its debts and liabilities having been discharged, shall prove insufficient to pay said several amounts so due to the said partners in full, then said partners shall be paid *pro rata*, and shall receive, *pro rata*, from the property of said firm the proceeds thereof, in case of sale, such sums, respectively, as the property or its proceeds will pay of said several and respective debts and shares, and the account between said partners shall be adjusted accordingly, and each partner shall be personally liable to account to the other partners for any or either appropriation by him of the property or assets of the firm beyond the amount thereof to which he is entitled as above stated and determined by this decree.

"And it is further ordered and decreed, that defendants pay the costs of this suit."

The other facts sufficiently appear in the opinion of the court.

Messrs. RUNYAN, AVERY & COMSTOCK, for the appellants.

Messrs. MILLER & FROST, for the appellee.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

The principal question to be determined in the case before us is, upon whom shall the loss, in consequence of the destruction of the building, machinery, engine, boiler, tools, etc., mentioned in the articles of co-partnership as delivered in as capital stock by Schwamb, fall? Upon Schwamb alone, or upon the parties in the proportion they are to share profit and loss? The latter was the conclusion of the court below; but appellants insist that the former is the basis upon which the account should have been stated.

The articles stipulate, "This co-partnership to commence on the twenty-eighth day of November, A. D. 1867, and to continue for the term of thirteen months and three days, ending on the thirty-first day of December, A. D. 1868; and to that end and purpose the said parties above named have each delivered in, as capital stock, as follows: Fred. Schwamb, the building known as No. 490 South Canal street, and all machinery, including engine, boiler, tools, benches, lumber, all manufactured stock, and that under process of manufacture, now in his possession, supposed to be worth, say, $9619.37, the same to be determined by an inventory. And the said J. W. Taft and D. R. Crego shall put in, as capital stock, the sum of $2500, making a total capital stock of $12,119.37, to be used and employed in common between them for the support and management of the said business, to their mutual benefit and advantage. And it is further agreed between the parties to these presents, that the said firm of Taft, Schwamb & Crego shall pay interest, annually, to F. Schwamb on the sum of $7119.37, or on what he may have in excess of said Taft and Crego's investment." * * * * * "And it is also agreed that they shall and will, at all times during said co-partnership, share, bear, pay, and discharge between them, each his share of all rents and other expenses that may be required for the support and management of the said business, and that all gains, profits and increase that shall come, grow or arise from or by means of their said business, shall, after paying the expenses as aforesaid, be divided between them, the said co-partners to receive their shares as follows: F. Schwamb to receive one-half of all gains or increase, or if the business has been done at a loss, then F. Schwamb to pay one-half of all such losses; J. W. Taft to receive one-fourth of all gains or increase, or to stand one-fourth of all losses in all business transactions during said co-partnership; D. R. Crego to receive one-fourth of all gains or increase, or stand one-fourth of all losses in all business transactions during said co-partnership."

It would, in our opinion, be difficult to employ language

300      Taft *et al. v.* Schwamb.      [Sept. T.

Opinion of the Court.

more clearly indicating that the "building, machinery, tools," etc., etc., became the property of the co-partnership, and ceased to be the individual property of Schwamb, than that employed in the articles. It was delivered in as " capital stock." What is " capital stock," in the sense in which the words are here used? Unmistakably, the capital or property of the co-partnership. The total capital stock represents everything of value belonging to the co-partnership, and it is therefore impossible that property delivered in as " capital stock," could be anything else than co-partnership property.

Being partnership property, the interest of each partner in it is to be determined by the extent of his interest in the partnership. It is said: " Each partner is possessed *per my et per tout*, that is, by the half or moity, and by all, or, in other words, each has a joint interest in the whole, but not a separate interest in any particular part of the partnership property; and being so possessed, and because the title of partners is undivided, it follows that all have a moiety or the same species of interest in the stock in trade, whether each individual partner contributes exactly in the same proportion or not; but their several degrees of interest must be regulated according to the stipulated proportions, and the different conditions of the partnership. To whatever share a partner may be entitled, in whatever sum the firm may be indebted to him, he has no *exclusive right* to any part of the joint effects, until a balance of accounts be struck between him and his co-partners, and it be ascertained precisely what is the actual amount of his interest." Gow on Partnership, 47; Story on Partnership, secs. 15, 16.

So, in *Bopp* v. *Fox et al.* 63 Ill. 543, this court said: " It is a well known rule, governing the relation of partnership, that partnership property must first be applied to the payment of partnership debts, and that the true and actual interest of each partner in the partnership stock is the balance found due to him after the payment of all the partnership debts and the adjustment of the partnership account between himself and his co-partners. And, in equity, real estate forms no excep-

tion, but stands on the same footing, in this respect, with personal property, no matter in whom the legal title may be vested."

It is undoubtedly true that the partners may, by contract, stipulate that the ownership of property may remain in one, while the partnership shall have only the use of the property, or make any other regulation, as between themselves, they may choose, in regard to the ownership of property used in connection with the business of the co-partnership, not prohibited by law; but the present case is unaffected by any such stipulation. The stipulation here, by making the property "delivered in" by Schwamb "capital stock," excludes the idea of a reserved ownership in him, and only a mere right to use the property by the co-partnership.

But, it is contended, there is a limitation in the clause relating to the sharing of profit and loss, which shows that it was intended Taft and Crego were only to share in the losses resulting from business transactions prosecuted subsequent to the payment of the capital stock, and disconnected entirely from losses of capital stock. This is based on the words, "losses in all business transactions during said co-partnership," which occur in the statement of the proportion of losses to be sustained by the respective parties, in the event of loss.

We regard this as but another, although not precisely accurate, mode of stating that losses in the partnership business shall be borne in the proportion there stated.

We have already seen that the property put in by Schwamb became partnership property, and the clause providing for the payment of interest by the firm to him on $7119.37, or the excess in the amount paid in by him over that paid in by Taft and Crego, is a recognition that the firm was indebted to him in that amount. This shows, then, at the outset, the firm had a capital of $12,119.37, but was indebted $7119.37, and the ownership was in the proportion of $2500 in Schwamb, to $2500 in Taft and Crego jointly, or one-half in Schwamb and one-fourth each in Taft and Crego; from which it would result Schwamb should have one-half the profits and bear one-

half the losses, and Taft and Crego each should have one-fourth the profits and bear one-fourth the losses, as is evidently intended by the clause under consideration. There is, in no view, in our opinion, anything in the clause negativing the idea that loss of capital should be borne in this proportion, and, in the absence of a contrary agreement, this is the equitable distribution of the burden.

Another clause in the articles of co-partnership is as follows: "And it is further agreed between the said parties, that, if, at the expiration of said co-partnership, said Taft and Crego shall wish to continue in said co-partnership, and become equal owners in the capital stock, they can do so upon a renewal of said co-partnership. The tools, fixtures and machinery shall be put in at a discount of ten per cent from the present inventory price."

This expressly recognizes the right of Taft and Crego to become equal owners in the capital stock on the terms then provided for, and, by implication, that they were then owners, but not equal owners, of the capital stock. There is nothing which can be said, even inferentially, to recognize an individual ownership in property used by the co-partnership, in Schwamb. The subsequent equal ownership may be, not of property then owned by Schwamb, but of the "*capital stock.*"

On the 1st of January, 1870, which was at the expiration of the term of co-partnership, as provided by the articles, the following was indorsed on the original articles and signed by the respective parties:

"By mutual consent, the above agreement will continue until January 1, 1871, with the exception of the interest of the partners, each partner's interest to be equal; that is, each one to have one-third of all profits, if any, and stand one-third of all losses in all business transactions during the continuance of this contract, the amount drawn out by each partner to be equal.

J. W. Taft,
· Frederick Schwamb,
D. R. Crego."

We think it clear that this was a continuation of the original co-partnership as provided for in the clause quoted from the articles, and that they thenceforth became equal owners in the capital stock. It is expressly provided that each partner's interest is to be equal. If each partner's interest is equal, then each has an equal interest in the capital stock, and, by consequence, should equally share in profit and loss, and the subsequent statement of the proportion of profit and loss to be shared can not be presumed to have been intended as a limitation, other than as to the matters connected with the partnership, in contradistinction to losses that might be sustained outside of those matters.

It is claimed the court erred in excluding evidence offered for the purpose of showing that the parties intended their interests should be different than we have held they were, under the written instruments made for the purpose of expressing their intentions.

The pleadings disclose no fraud or mistake in the execution of these instruments. It is charged in the bill, and admitted in the answer, that the partnership was formed, and re-formed, under them, and that the business was carried on pursuant to their terms.. There is no cross-bill praying that they, or either of them, be corrected to conform to the intentions of the parties. It is· admitted the capital stock was made up, in the first instance, in the manner recited in the original articles. The professed object of the introduction of the evidence, however, is to explain a latent ambiguity.

This evidence has no tendency to prove a latent ambiguity. Its effect, if received, could, at most, but tend to prove contracts different from the construction we give to the written instruments—in other words, to contradict the writing by parol, and it was properly excluded. *Mason* v. *Park*, 3 Scam. 534–5; *Collender* v. *Dinsmore*, 55 N. Y. 208; *Norton* v. *Woodruff*, 2 Comst. 155; *Giles* v. *Comstock*, 4 Comst. 272.

The objection that the interlocutory decree recites that the court found that the building, machinery, etc., had been burned, without any evidence, is frivolous. The effect of that decree

is merely to determine the rights of the parties under the contracts, and to state the basis upon which the account was to be taken. This recital might have been wholly omitted without affecting the case, and its insertion in nowise prejudiced appellants.

The objection, that all the costs are decreed against appellants, when, since the object of the suit was to obtain a construction of the written instruments in which the parties were mutually interested, they should have been divided equally, we do not think well taken. Appellants, by an unauthorized construction of the written instruments, and by refusing to account on any other basis, necessitated the bringing of the suit, and the payment of the costs properly falls on them.

We are of opinion there is no error in the record, and the decree will therefore be affirmed.

*Decree affirmed.*