JOHN J. MORRISON

*v.*

THE AUSTIN STATE BANK.

*Opinion filed December 22, 1904—Rehearing denied Feb. 8, 1905.*

1. APPEALS AND ERRORS—*court does not consider questions upon agreement of parties.* An agreement of the parties that the right of appellant to appeal shall be submitted to the court of review does not authorize a consideration of that question, where appellee does not assign cross-error nor make a motion to dismiss the appeal.

2. SAME—*when party cannot assign error upon a matter which might have rested in proof.* If the parties to a suit agree, by stipulation, that no advantage shall be claimed from the absence of proof

from the record, the appellee cannot urge as error that appellant's right to appeal does not appear from the recitals of the decree, since that right may have been shown by proof.

3. PARTNERSHIP—*interest of partners in firm property is neither joint nor in common.* While partnership property has many of the characteristics of estates in common and in joint tenancy, yet the interest of the partners in the firm property is neither that of joint tenants nor of tenants in common, but is *sui generis.*

4. SAME—*what is required of persons dealing with partnerships.* Persons dealing with a partnership are required to take notice of the partnership, the identity of its members, its business and the general course of that business.

5. SAME—*one aiding partner to defraud firm can receive no benefit.* A partner who disposes of firm property for his own benefit alone perpetrates a fraud upon the partnership, and if the party dealing with him knows that such is to be the result he can receive no benefit from the transaction.

6. SAME—*when a transaction with partner is voidable.* One who knowingly receives partnership property from a partner for a past debt owing by the partner individually, knows that he is perpetrating a fraud upon the partnership, and the transaction, in such case, is voidable.

7. SAME—*effect where property disposed of in fraud of partnership is negotiable.* If the partnership property received by a person from a partner in satisfaction of a past individual debt of such partner consists of instruments negotiable under the law merchant, an innocent purchaser thereof for value will obtain a good title.

8. BILLS AND NOTES—*city warrant against a special assessment fund is not negotiable.* A municipal warrant issued against a special assessment fund in favor of the contractor is not negotiable in the sense that it is entitled to protection under the law relating to bills and notes. (HAND, J., dissenting.)

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. AXEL CHYTRAUS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court for the First District affirming a decree rendered by the superior court of Cook county on an intervening petition filed by the appellee in an equitable action brought by the appel-

lant, John J. Morrison, and James D. Morrison and William Sullivan, against one George I. O'Brien.

The original bill was brought by the appellant, John J. Morrison, and James D. Morrison and William Sullivan, against George I. O'Brien, setting up that said four parties had constituted a partnership under the firm name of John J. Morrison & Co. & O'Brien, and that said O'Brien had collected and converted to his own use certain assets of the partnership, viz., certain warrants issued to the partnership by the town of Cicero, and praying for an accounting and the appointment of a receiver. A receiver was appointed, and served notice upon the town of Cicero that said warrants belonged to said receiver and should be paid to none other. Thereupon the appellee herein, which had in the meantime acquired possession of said warrants in the manner hereinafter described, filed its said petition for an order commanding said receiver to withdraw said notice. A hearing was had on said petition and a decree rendered in favor of the appellee. The question as to the ownership of these warrants was the only one to be determined, so that the decree rendered on said petition practically decided the entire cause. After the rendition of said decree an order was made by the superior court finding that the appellant and James D. Morrison and William Sullivan were interested in said decree so as to be entitled to appeal therefrom, either jointly or severally, and authorizing such joint or several appeal. Thereafter the appellant herein duly perfected his separate appeal to the Appellate Court, from which he has also duly perfected his separate appeal to this court. Neither of the other parties has appealed. The appellant and appellee thereafter stipulated that the record in the cause on appeal to the Appellate Court and the Supreme Court should consist of the decree, the order authorizing the appeal by the appellant and the stipulation, and that the facts shown by the recitals in the decree were true. It was agreed by the stipulation that the case should be submitted to the upper courts on the ob-

jection of the appellee to the appellant's right of appeal, and upon the objection of appellant to the correctness of the decree on the facts as therein recited.

The admitted facts presented by the decree are, that George I. O'Brien, a partner of the firm of John J. Morrison & Co. & O'Brien, did on the 27th day of February, 1901, on behalf of and as a partner in said firm, receive from the town of Cicero, a municipal corporation, certain vouchers or warrants amounting to the sum of $2208.10, and being in the form following:

<div style="margin-left:2em">

*This warrant is payable only from the special assessment named when collected.*

"COOK COUNTY, ILLINOIS,
No. .....                              *Town of Cicero.*
CLERK'S OFFICE, AUSTIN, *Feb. 21, 1901.*
*Treasurer Town of Cicero:*

Pay to John J. Morrison Co. & O'Brien the sum of ........dollars for bal. on cement walks...........out of the appropriation for the special No..... fund only. And charge same to the appropriation for said fund. ($......)

I hereby certify that the above bill was ordered paid by the board of trustees of the town of Cicero.

Countersigned,
Signed,                              JOHN I. JONES,
    J. E. TRISTRAM,            *Pres't Town of Cicero.*
        *Town Clerk.*"

</div>

It is also admitted that these vouchers were executed and issued by said town of Cicero for work done and material furnished by said firm of John J. Morrison & Co. & O'Brien under written contracts made by said firm and its assignors with the town of Cicero for the laying of cement sidewalks; that after receiving said vouchers or warrants aforesaid the said George I. O'Brien endorsed them and delivered them to his father, Thomas O'Brien; that such endorsement and delivery were without any express authority from his co-partners, and that his co-partners, and the receiver thereafter appointed of such co-partnership assets, repudiated the action of said George I. O'Brien in making such endorsement and delivery when the same became known to them;

that the sole consideration for the said endorsement and delivery was a past due indebtedness of George I. O'Brien to his said father, Thomas O'Brien; and that the said Thomas O'Brien was acquainted with the affairs of the said co-partnership of said John J. Morrison & Co. & O'Brien, and was chargeable with knowledge that the said warrants were the property of said John J. Morrison & Co. & O'Brien; that Thomas O'Brien endorsed the said warrants and delivered them to the Austin State Bank, the appellee herein, and received in payment therefor the sum of $2053.90, which he kept and applied to his own use, and that neither the said firm nor its receiver has ever received any part thereof or derived any benefit from said payment; that the Austin State Bank received the warrants in the usual and ordinary course of business for the valuable consideration aforesaid; that it had no notice, information or knowledge, except as derived from the face of the said warrants, of any claim, of any nature, of any other person to said warrants, or that the said firm of John J. Morrison & Co. & O'Brien was in the hands of a receiver, or that Edwin J. Zimmer had been appointed such receiver, or that litigation was then pending; that on the 11th day of October, 1901, the receiver, Zimmer, served notice on the treasurer of the town of Cicero claiming the moneys represented by the warrants above described, and that on December 20, 1901, the Austin State Bank, appellee herein, presented the warrants to the said treasurer for payment and payment was refused.

Appellant has assigned a number of errors, but the principal one is that the court erred in holding that the vouchers and warrants in question, and the moneys represented thereby, were not the property of the partnership and should be delivered to the receiver.

JAMES A. BRADY, for appellant:

The transfer of partnership property by one partner in payment of his individual debt passes no title. *McNair* v.

*Platt,* 46 Ill. 211; *Rainey* v. *Nance,* 54 id. 29; *Buchanan* v. *Meisser,* 105 id. 638; *Harts* v. *Byrne,* 31 Ill. App. 260.

This is so even though the transferee had no notice of any of the facts and acted in absolute good faith. *Brewster* v. *Mott,* 4 Scam. 378; *Rogers* v. *Batchelor,* 12 Pet. 221; *Cannon* v. *Lindsey,* 85 Ala. 198; *Buck* v. *Moseley,* 24 Miss. 170; *Ackley* v. *Staehlin,* 56 Mo. 558; *Geery* v. *Cockroft,* 33 N. Y. Sup. Ct. 147; *Purdy* v. *Powers,* 6 Pa. 492; *Bank* v. *Campbell,* 75 Va. 34.

Municipal warrants, such as are involved in this case, are choses in action. 21 Am. & Eng. Ency. of Law, (2d ed.) 26; 6 id. 4; *People* v. *Johnson,* 100 Ill. 537; *Sheldon* v. *Sill,* 8 How. 441.

Choses in action are of two classes as regards defenses to them: negotiable and non-negotiable. In the negotiable class belong bills of exchange and promissory notes, with various other instruments held to be promissory notes under the Illinois negotiable instrument statute; in the non-negotiable class belong municipal warrants, such as are involved in this case, and all other choses in action. 2 Am. & Eng. Ency. of Law, (2d ed.) 1084; 21 id. 26; *Newell* v. *School Directors,* 68 Ill. 514; *School Directors* v. *Fogleman,* 76 id. 189; *People* v. *Johnson,* 100 id. 537.

Municipal warrants, as non-negotiable choses in action, as regards defenses to them, have been universally held only transferable subject to all equities existing in favor of the debtor party. 21 Am. & Eng. Ency. of Law, (2d ed.) 26; *Newell* v. *School Directors,* 68 Ill. 514; *School Directors* v. *Fogleman,* 76 id. 189; *People* v. *Johnson,* 100 id. 537.

CASTLE, WILLIAMS & SMITH, (BEN M. SMITH, of counsel,) for appellee:

An innocent *bona fide* purchaser without notice and for a valuable consideration, in the usual and ordinary course of business, will be protected. *Choteau* v. *Jones,* 11 Ill. 300; *Fox* v. *Peck,* 15 id. 226; *Lyons* v. *Robbins,* 46 id. 276; *Rail-*

*road Co.* v. *Phillips,* 60 id. 190; *Hecker* v. *Monroe,* 176 id. 384.

The partners in this case are estopped from denying the right of O'Brien, one of the partners, to sell partnership property and receive the payment therefor in the usual and ordinary course of business. Mechem on Partnership, sec. 186; Mechem on Sales, secs. 144, 159, 170, 946; Pomeroy's Eq. Jur. secs. 710, 712.

Morrison, personally, has no right to appeal. *Marvin* v. *Collins,* 98 Ill. 510; *Gogan* v. *Burdick,* 182 id. 126.

Mr. Chief Justice Ricks delivered the opinion of the court:

Appellee, by its brief, questions the right of John J. Morrison, the appellant, to prosecute this appeal, and that question will first receive our consideration.

The record was made up by a stipulation of the parties, in which it was agreed that the record should consist of the decree of the superior court, the order of court granting the appeal, and the stipulation. It is also agreed "that the record, pleadings and proof in such case is hereby waived, and no exception, benefit or advantage shall be taken by either party hereto to the same." It is also agreed that the objection of appellee that appellant has not the right of appeal, and the objection of the appellant to the correctness of the decree on the facts, are submitted to the consideration of the Appellate Court, and in case of an appeal to this court the same questions shall be presented.

We think appellee's contention should be denied for two reasons. Appellee did not assign cross-error in the Appellate Court or in this court, nor did it make a motion in this court to dismiss the appeal upon the ground stated. Parties may agree upon the questions they will present to the court upon the record and they will be confined to them, but the court does not consider error upon the mere agreement of the parties. Notwithstanding the agreement, the errors re-

lied on must be assigned. The Appellate Court took jurisdiction of the cause and disposed of it upon its merits.

The decree is not predicated upon the ground that John J. Morrison, the appellant, had no interest in the subject matter, but that the better right to the property in question was in the appellee, so that there is nothing appearing in the facts of the decree which tends to show that Morrison was not interested. On the contrary, the facts and recitals in the decree tend to show he was interested in the subject matter.

Appellee recites and relies upon *Gogan* v. *Burdick*, 182 Ill. 126, from which it quotes: "The settled rule is, that a party in whose favor a decree granting relief is rendered must sustain it by specific facts which justify it, either recited in the decree as proved on the hearing and found by the court, or by preserving the evidence establishing such facts." It may be first noted that the rule there cited is applicable only to the person in whose favor the decree is granted; but if it be held applicable to both of the parties, then it is further seen that the fact may appear by recitals in the decree or the proof at the hearing. In this case it is expressly stipulated that upon any matter of proof no exception, benefit or advantage shall be taken by either party. Under the authority cited, the question here presented was one that might have appeared by the proof in the record if it did not sufficiently appear from the recitals in the decree, and as appellee agreed that it is to have no advantage because of the absence from the record of the proof, it cannot now be heard to urge error upon a matter that might have rested in proof.

The questions upon the merits of this case that are presented for our consideration, as we conceive them, are as to the rights and powers of a partner in reference to the partnership property, and the character of the instruments here in question. The latter question involves the determination of whether those instruments are negotiable within the meaning of the law merchant, so that the purchaser thereof may

take the same unaffected by the rights of the maker or intermediate holders.

The legal characteristics of partnership property, and the interests, powers and rights of the partners relative to the same, are peculiar, and cannot be well assimilated to any other class of property when viewed in its relation to its ownership. While it has many characteristics of estates in common and in joint tenancy, yet the interest of partners in the firm property is neither that of joint tenants nor that of tenants in common, but is *sui generis.* In *Taft* v. *Schwamb,* 80 Ill. 289, it is said (p. 300) : "Each partner is possessed *per my et per tout,*—that is, by the half or moiety and by all, —or, in other words, each has a joint interest in the whole but not a separate interest in any particular part of the partnership property; and being so possessed, and because the title of partners is undivided, it follows that all have a moiety or the same species of interest in the stock in trade, whether each individual partner contributes exactly in the same proportion or not. But their several degrees of interest must be regulated according to the stipulated proportions and the different conditions of the partnership. To whatever share a partner may be entitled, in whatever sum the firm may be indebted to him, he has no exclusive right to any part of the joint effects until a'balance of accounts be struck between him and his co-partners and it be ascertained precisely what is the actual amount of his interest." If he sell his interest in the partnership without the consent of his partner that the purchaser shall become a partner and succeed him in the partnership, the purchaser does not by his purchase become a partner, but simply becomes the owner of the proportion his vendor held in the partnership after the closing up of the partnership and the payment of the partnership debts. If a partner die, his heirs do not succeed to his rights as a partner nor to the partnership property,—and particularly so where it is personal property,—but the surviving partners hold all the property until the closing up and settlement of

the partnership, when the heirs succeed merely to the proportionate share of the remaining assets. These attributes of such property arise in a large degree from the existence of the situation of two or more persons having interests in the business, being clothed with power to conduct it. They owe fidelity to each other, and the firm, as such, owes good faith to the public, and it is in the adjustment of the respective rights and duties between the partners and the public that the qualities peculiar to this property are given it. Where a business is being conducted by a number of persons who are owners of that business, it is necessary that each of the persons so owning shall be invested with power to do all things in the regular, necessary and usual course of business, and when they do so it is necessary and proper that those who deal with them shall be protected. These considerations have led the courts to require of persons who deal with partnerships to take notice of the partnership, the identity of its members, the character of the partnership, its business and the general course of that business, as the public owes to the partnership the same fidelity, when dealing with its individual members, that the partnership owes to the public in such cases. Ordinarily partnerships are conducted for profit. The property of the partnership is usually sold for money and the money re-invested, and through these means the business is kept up. The return of sales received by each partner is for the partnership,—the result and representative of the partnership goods,—and is to be accounted for to the partnership or turned into it by the person who makes the sale. These matters are, and must be, known to all persons who deal with them. The partner who makes disposition of partnership goods that the benefit may come to him alone perpetrates a fraud upon the partnership, and the person who deals with him knowing that such is to be the result is a party to that fraud and can receive no benefit from it. When Thomas O'Brien, the father of George I. O'Brien, received from him the warrants or vouchers in question for the pay-

213—31

ment of money that belonged to the partnership, of which appellant was one, in payment of a past due debt to himself from his son and not from the partnership, he knew that his son was making a fraudulent use of the partnership prop- erty, and being a party to that fraud he did not and could not take anything by it. As between him and the partnership it was as though the transaction had not been made at all, or as though he had found or stolen the property acquired by him through such means. True it is that the public, in dealing with a partner in the regular course of business, is not required to see that the partner accounts for the funds received by him for the partnership property. If a purchase be made in good faith or an assignment of paper belonging to the partnership shall be made by one of the partners in the firm name for a cash consideration that is a fair equivalent for the property, or under such circumstances that the pur- chaser is not chargeable with notice of the fraudulent pur- pose of the partner who is making the disposition, then the purchaser is not required to see that the partner does account to the partnership for the proceeds thus obtained by him; but when a partner disposes of the property of the partner- ship and obtains nothing, he can return nothing to the part- nership, and one so dealing with a partner cannot shut his eyes to the transaction and say that he is innocent of any wrongful intention toward the partnership, and one who re- ceives the partnership property from one partner for a past due debt to himself from that partner knows that the partner is not receiving anything that can be shared with the part- nership and knows that he is thereby working a fraud upon the partnership. The transaction may be ratified by the part- nership and may be validated, as one may elect to waive a tort and proceed in assumpsit as for goods sold, but until, with a full knowledge of all the facts, the partnership has rat- ified the transaction it is voidable. When Thomas O'Brien received the orders from his son he knew the partnership was to receive nothing for them, and the transaction was

fraudulent and voidable. If, however, the instruments so obtained by him are negotiable in the sense that promissory notes and bills of exchange are under the law merchant, he might sell or dispose of them to an innocent purchaser for value, who would obtain a good title to them as against all the world.

We have looked to the act authorizing the issuance of these warrants or vouchers, and there is no provision found in it giving them the required characteristics of negotiability. We have looked to the statute in relation to negotiable instruments, and find that by sections 3 and 4 of chapter 98 certain instruments are mentioned and are given the quality of assignability by endorsement, so that they may be passed by assignment in writing in the same manner as bills of exchange are, "so as absolutely to transfer and vest the property thereof in each and every assignee successively." By section 5 it is provided that the assignee may sue in his own name and maintain the same kind of action that the original obligee or payee could have done; and section 7, which was section 1 of an act approved June 4, 1895, in relation to promissory notes, etc., (Laws of 1895, p. 262,) states just what instruments among all the instruments referred to in the act shall be clothed with the attributes of negotiability according to the custom of merchants, and by it those qualities are only extended to promissory notes payable in money, and it contains the further provision that the holder or owner of any other evidence of indebtedness mentioned in the act may sue the assignor when he has shown due diligence to collect from the maker. So it will be seen that neither by the act authorizing the issuance of the vouchers in question nor by our statute in regard to negotiable instruments are the instruments in question given the qualities necessary to protect appellee as an innocent purchaser, unless such instruments can be held to be promissory notes within the meaning of our act.

It seems to have been generally held that municipal corporations have no power, in the absence of an express grant,

to issue unimpeachable evidence of indebtedness, and so it was held in *Police Jury* v. *Britton,* 15 Wall. 566: "It is one thing for county or parish trustees to have the power to incur obligations for work actually done in behalf of the county or parish and to give proper vouchers therefor, and a totally different thing to have the power of issuing unimpeachable obligations, which may be multiplied to an indefinite extent." And in *Mayor* v. *Ray,* 19 Wall. 468, it is said: "Vouchers for money due, certificates of indebtedness for services rendered or for property furnished for the uses of the city, orders or drafts drawn by one city officer upon another, or any other device of the kind used for liquidating the amounts legitimately due to public creditors, are, of course, necessary instruments for carrying on the machinery of municipal administration and for anticipating the collection of taxes; but to invest such documents with the character and the incidents of commercial paper, so as to render them in the hands of *bona fide* holders absolute obligations to pay, however irregular or fraudulently issued, is an abuse of their true character and purpose. It has the effect of converting a municipal organization into a trading company and puts it in the power of corrupt officials to involve a political community in irretrievable bankruptcy. No such power ought to exist, and in our opinion no such power does legally exist, unless conferred by legislative enactment, either express or clearly implied." The above cases are quoted and the subject ably discussed in the case of *State ex rel.* v. *Cook,* 61 N. W. Rep. (Neb.) 693.

In *Miner* v. *Vedder,* 66 Mich. 101, a suit was brought against the treasurer of a village upon a warrant, by the assignee thereof. The treasurer answered, among other things, that he had received notice from one Boies that the orders originally belonged to him and that the relator was not entitled to them. The court found that the relator was not the lawful holder and was not entitled to recover. Upon appeal, in discussing that phase of the case, the court said (p. 103):

"It was claimed upon the trial, and is argued here, that relator purchased the orders in good faith, for a valuable consideration, without notice of the mistake or lien claimed, and that therefore, being a *bona fide* holder of said orders, neither such mistake nor lien could be allowed or enforced as against him. It is sufficient to say, in answer to this argument, that these warrants or orders issued by the village of Hudson are not negotiable instruments, and while in the hands of the relator are subject to all the equities existing between the payee and the village, or between the payee and any other person, without reference to the good faith of the relator in his purchase."

This court, in *People ex rel.* v. *Johnson,* 100 Ill. 537, speaking of a county order, said (p. 546) : "We regard the rule well settled, by considerations of public policy as well as by a decided preponderance of authority, that warrants or orders drawn by one municipal officer upon another, in the disbursement of the funds of the municipality and payment of its indebtedness, are not to be regarded as negotiable or commercial paper, cutting off equities against the corporation. As we have already seen, the official agents of these municipalities have no implied power to execute such paper, and to clothe these warrants or orders with the qualities and attributes of commercial securities would be to give them a character foreign to the object and purposes of their creation." In that case the case of *Garvin* v. *Wiswell,* 83 Ill. 215, in which a bond issued by a county to meet an appropriation to pay bounties for volunteers was held to be a negotiable instrument, is reviewed and distinguished, and attention is directed to the fact that the special act authorizing the issuance of bonds gave them the character of negotiable instruments. The court, in discussing it, said (p. 547) : "The effect of this act was equivalent to a previous authority to issue the instrument, and gave to it, as was originally intended, all the attributes of commercial paper. That the legislature has ample power to authorize counties or other

municipalities to issue negotiable securities is not to be questioned, yet without such special legislative authority they have no power to do so, and there is no pretense that the order in this case was issued for any such purpose or was authorized by any special act of the legislature."

The case of *First Nat. Bank* v. *Gates,* 66 Kan. 505, (97 Am. St. Rep. 383,) is very similar in principle to the case at bar. There Gates gave to Blanchard a sum of money with which to purchase for him county warrants. Blanchard was cashier of the bank and Vawter was its president. Blanchard purchased the warrants and placed them in the bank for Gates. Vawter took the warrants and pledged them as security for a loan from the appellant, the First National Bank. Gates demanded the warrants and their delivery was refused and he sued for conversion. The court says: "The bank, however, claims that having taken this warrant in the usual course of business for a sufficient consideration, without knowledge of Vawter's wrong, it is entitled to be protected by the law merchant. The question is, therefore, is a county warrant, which is negotiable in form but non-negotiable in the sense that the county issuing it may defend against it, nevertheless negotiable as between successive holders, so that a thief may vest title to it in a *bona fide* taker of it? That one so acquiring ordinary commercial paper would be protected is not questioned. An innocent purchaser, in good faith, of commercial paper gets a good title, even though he purchase from a thief. (Citing authorities.) This is so because of the law merchant. * * * But paper non-negotiable for any reason is not thus protected. The very fact of its being non-negotiable is a sign of warning to the prospective purchaser and places him on his guard. Municipal warrants, though negotiable in form, are non-negotiable in fact, hence they are not within the protection of the rule which guards commercial paper." To the same effect is *Keller* v. *Hicks,* 22 Cal. 457; 83 Am. Dec. 78.

We think the above cases state a sound rule, and one which sound public policy and the greater weight of authority alike demand shall be adhered to.

There is another insuperable reason why the warrants here in question cannot be deemed or held to be commercial paper. They were given for work done under the Local Improvement act of 1897 and payable out of special assessments, and so state upon their face. By sections 73 and 90 of that act the contractor or other person holding such warrants has no claim against the municipality issuing them, other than the fund arising from the assessments that may be collected. "Instruments drawn upon a particular fund, whether the fund has already accrued or is to accrue in the future, are not negotiable bills or notes, since they do not carry the general personal credit of the maker and since they are contingent upon the sufficiency of the fund upon which they are drawn." (4 Am. & Eng. Ency. of Law,—2d ed.—87, and authorities there cited.) It is needless to extend this opinion or to further cite authorities upon this last proposition, as they are very numerous and entirely uniform.

The judgment of the Appellate Court and the decree of the superior court are reversed and the cause remanded to the superior court, with directions to that court to dismiss the intervening petition of appellee, and to make such order with reference to the ownership of said warrants as shall conform to this opinion and as justice and equity may require.

*Reversed and remanded, with directions.*

Mr. JUSTICE HAND, dissenting: I think the warrants in question were so far negotiable as to vest title in the Austin State Bank against all persons except the town of Cicero. To hold otherwise would be to impair the commercial value of such warrants, and increase the cost to the property owner of all local improvements in municipalities in this State.