ESTATE OF SIDNEY S. GORHAM, SIDNEY S. GORHAM AND WILLETT N. GORHAM, EXECUTORS, PETITIONERS, *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 83214.   Promulgated December 28, 1938.

*Robert W. Wales*, Esq., for the petitioners.
*Dean P. Kimball*, Esq., for the respondent.

OPINION.

ARNOLD: This proceeding involves a deficiency of $5,013.66 in income tax for the year 1932. The issue presented is whether respondent erred in increasing the decedent's gross income for 1932 by including therein $18,000 which is alleged to have been income of the Sidney S. Gorham trust. The decedent died subsequent to the receipt of the deficiency letter and this proceeding is brought by the executors of his estate. The facts were stipulated.

In 1906 the decedent formed a law partnership with Henry W. Wales. From 1911 to some time during the taxable year the partnership operated as Miller, Gorham & Wales. During 1932 the firm name was changed to Miller, Gorham, Wales & Adams. On January 3, 1932, there were six partners in the law partnership of Miller, Gorham & Wales. The partners had no written articles of copartnership.

By an instrument dated January 4, 1932, entitled "Declaration of Trust", the decedent, after reciting that he was a full partner in the aforesaid law firm and that he desired "to make equal provision for his wife, MYRTLE W. GORHAM, and his two sons, SIDNEY S. GORHAM, JR. and WILLETT N. GORHAM", declared "himself to be Trustee of his entire interest in the firm of Miller, Gorham & Wales, in trust for the uses and purposes" therein specified. It was then provided that the trustee should pay to decedent's wife and two sons $6,000 each from "the income of this trust" and that the balance of the income of the trust should be paid to the decedent personally. Upon the death of any of the beneficiaries entitled to $6,000 per year his or her share was to be divided equally between the survivors, and upon the death of any two of said beneficiaries, the survivor should receive the full sum of $18,000 a year from the trust. The trust was to continue during the life of the decedent unless sooner terminated. It was provided that the trust "may be terminated with the written consent of any one of the three (3) beneficiaries, Myrtle W. Gorham, Sidney S. Gorham, Jr., and Willett N. Gorham, by the donor hereof at the end of any calendar year by giving written notice on or before December 1 of the preceding year to each of the said three (3) beneficiaries, * * * or the survivor of them." It was provided that no part of the income of the trust should be liable for any debts or obligations of any of the beneficiaries and that the beneficiaries should have no power to anticipate or assign the latter or any portion of the income of said trust estate, but the income shall be paid to the beneficiaries free of all claims of any kind or nature whatsoever.

Each of the decedent's partners knew of the execution of the instrument of January 4, 1932, and none of them made objection thereto.

At January 4, 1932, the partnership had accounts receivable of $41,647.23 representing sums owing to the partnership by reason of services theretofore rendered. The partnership had furniture, fixtures, and a library, with an aggregate fair market value of approximately $8,000. The partnership had cash on deposit in banks on January 4, 1932, in the sum of $44,168.06 and its accounts payable on that date amounted to $2,568.22. The partnership was indebted in no further amounts except in so far as the partners had an interest in the partnership property.

During the year 1932 the partnership had gross income on a cash basis of $236,682.02. Included in this sum was $21,787.38 representing collections on accounts receivable of $44,168.06, due the partnership on January 4, 1932. Also included in the partnership's gross income for 1932 was the further sum of not less than $25,000 received by the partnership which was fairly applicable to services rendered prior to the calendar year 1932. During the calendar year 1932 the partnership occupied an entire floor of a modern office building at 1 North LaSalle Street, Chicago. It never had less than 21 employees, of whom 8 were practicing lawyers. At December 31, 1932, there were 24 employees. The aggregate pay roll of the partnership for the year 1932 was $50,650.45. By reason of the supervision of older and experienced lawyers, the partnership received more for the services of its lawyer employees than it was required to pay under the contracts of employment with such lawyer employees.

Under the partnership agreement each partner received such share of the net partnership income as should be mutually agreed upon. For years prior to 1932 the decedent never received less than one-quarter of the net partnership income. One of the criteria used by the partners in determining what share of the net partnership income should be received by each partner was the amount of the fees paid into the partnership by clients who had originally employed the firm through the particular partner in question. The fees paid into the partnership during 1932 included gross fees in the amount of approximately $109,000 paid by clients considered by the partners as having employed the firm through Sidney S. Gorham, who was the senior partner in charge of their matters. More than half the services for which said fees were paid were rendered by partners and employees of the firm other than the decedent. Sidney S. Gorham devoted almost his entire time to the affairs of these clients.

No change of any kind was made in the partnership name upon the execution of the declaration of trust dated January 4, 1932. No "trustee" designation was added to decedent's name in the firm or in his or the firm's dealings with clients or the public. No new certificate to practice law was ever obtained by Sidney S. Gorham as

trustee, nor was an application made for such certificate. To his and the firm's clients, Sidney S. Gorham, the individual, remained the partner. None of the beneficiaries mentioned in the instrument of January 4, 1932, except the decedent and Sidney S. Gorham, Jr., was licensed to practice law at the time the document was executed or in 1932. Sidney S. Gorham, Jr., was a practicing lawyer employed by, but not a member of, the partnership in 1932. He was admitted to the bar in October 1930, had been employed in general office work of the partnership, and was so employed in 1932. He received a salary which was paid him as full compensation for his services.

The partnership return for 1932 reported net income of $148,730.04, which was allocated to the various partners in accordance with their respective interests. The return allocated $52,174.02, constituting 35.55 percent of the net income to "Sidney S. Gorham, Trustee." For 1932 Sidney S. Gorham filed a fiduciary return of income for the Sidney S. Gorham trust, wherein he reported the income of the trust as $52,174.02 which he allocated to the beneficiaries in the amount of $6,000 each to Myrtle W. Gorham, Sidney S. Gorham, Jr., and Willett N. Gorham, and $34,174.02 to Sidney S. Gorham.

In determining the deficiency the respondent held that the instrument of January 4, 1932, was merely an assignment of future income, and increased the decedent's income by the $18,000 paid to his wife and two sons. At the same time respondent increased the amount of the decedent's income from the partnership in the amount of $862.68, which adjustment is not here in controversy.

Upon the foregoing facts the petitioners deny that the decedent is liable for tax upon the $18,000 of trust income distributed to the members of his immediate family. They contend that the right of a partner may be held in trust, that where a partner's rights are held in trust the income of the trust is taxable in the same manner as the income of any other valid trust, and, finally, that, even if the partner individually performs services for the partnership, the distributive share which he receives as trustee is not taxable to him but is taxable as trust income. The respondent contends that the trust instrument did not make the beneficiaries thereof partners in the firm of Miller, Gorham & Wales, nor did it give them an interest in the assets of the firm. He further contends that Miller, Gorham & Wales was a personal service partnership and the trust instrument constituted nothing more than an assignment of future income.

In the trust agreement the decedent "declares himself to be trustee of his entire interest" in the partnership and directs the trustee to pay out of the trust income $6,000 per annum each to his wife and two sons. The critical words appear to be the "entire interest"

which the decedent conveyed in trust. Questions which naturally arise are: What was the nature of the decedent's "entire interest"? What effect did the declaration of trust have, and was it the equivalent of an assignment of decedent's future earnings, as contended by the respondent, or was it the transfer of a property right, the income from which is taxable to the owner of the property? These questions must be examined in the light of the Illinois law relating to partnerships in order to ascertain what rights a partner has in the partnership and in the partnership assets.

The common law rules covering partnerships are in force in Illinois except where said rules have been incorporated into or changed by state statutes. Ch. 28, Cahill Illinois Revised Statutes (1929). In 1917 Illinois enacted the Uniform Partnership Act, which act appears as chapter 106a of the 1929 edition of Cahill Illinois Revised Statutes. Part V thereof, which relates to the property rights of a partner, is set forth in the margin.[1]

In Illinois, therefore, a partner has no individual property right in specific partnership property, separate and apart from the partners, that is assignable, ch. 106a, part V, ¶ 25 (b), Illinois Revised

---

[1] ¶24. *What are property rights of partners.*] § 24. The property rights of a partner are (1) his rights in specific partnership property, (2) his interest in the partnership, and (3) his right to participate in the management.

¶25. *Partner as co-owner of partnership property—Incidents of tenancy.*] § 25. (1) A partner is co-owner with his partners of specific partnership property holding as a tenant in partnership.

(2) The incidents of this tenancy are such that:

(a) A partner, subject to the provisions of this Act and to any agreement between the partners, has an equal right with his partners to possess specific partnership property for partnership purposes; but he has no right to possess such property for any other purpose without the consent of his partners.

(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property.

(c) A partner's right in specific partnership property is not subject to attachment or execution, except on a claim against the partnership. When partnership property is attached for a partnership debt the partners, or any of them, or the representatives of a deceased partner, cannot claim any right under the homestead or exemption laws.

(d) On the death of a partner his right in specific partnership property vests in the surviving partner or partners, except where the deceased was the last surviving partner, when his right in such property vests in his legal representative. Such surviving partner or partners, or the legal representative of the last surviving partner, has no right to possess the partnership property for any but a partnership purpose.

(e) A partner's right in specific partnership property is not subject to dower, curtesy, or allowances to widows, heirs, or next of kin.

¶26. *Interest of partner—Personal property.*] § 26. A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property.

¶27. *Effect of conveyance of partner's interest.*] §27. (1) A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which the assigning partner would otherwise be entitled.

(2) In case of a dissolution of the partnership, the assignee is entitled to receive the assignor's interest and may require an account from the date only of the last account agreed to by all the partners.

Statutes, *supra*, and if he attempts to assign his interest in the partnership, the assignment relates only to his share of the profits and surplus. *Id.* ¶ 26; *Morrison* v. *Austin State Bank*, 213 Ill. 472; 72 N. E. 1109, 1111. The effect of the declaration of trust was to convey decedent's entire interest in his distributive share of the profits and surplus, present and prospective. *Bank* v. *Carrollton Railroad*, 78 U. S. 624, 628. It did not reach partnership property, as such, but only a proportionate part of the profits, as the partnership continued its existence as a going concern without change. The conveyance operated in the same manner as, and is equivalent for tax purposes to, the assignment of future income. *Lucas* v. *Earl*, 281 U. S. 111; *Burnet* v. *Leininger*, 285 U. S. 136.

We have carefully examined the authorities cited by petitioners in support of their contention, together with cases discovered in our own research. None of the cases cited by petitioners are exactly in point. Each is distinguishable as to facts involved or as to the question presented. In *Rose* v. *Commissioner* (C. C. A., 6th Cir.), 65 Fed. (2d) 616, which petitioners contend must control our decision herein, Rose declared himself trustee for his wife of a one-ninth interest and of a one-ninth interest for each of his two daughters in the partnership business and properties, which properties were specifically named. There was a reorganization of the partnership and a readjustment of assets. In the case before us the decedent simply declared himself trustee of his entire interest in a partnership in which capital was not an income producing factor.

In *Kell* v. *Commissioner* (C. C. A., 5th Cir.), 88 Fed. (2d) 453, cited by petitioners, the source of income was mineral lands and leases, and the court held that the taxpayer had divested himself of his one-fourth interest in the property so that the income therefrom belonged to his transferees. In the *Kell* and *Rose* cases the source of the income was the partnership property, while in the case before us the source of the income of the partnership was the knowledge, skill, and ability of the partners in the practice of law. The knowledge and skill which the decedent possessed was not property that could be transferred in trust or otherwise. American Law Institute, Restatement of the Law, Trusts, sec. 74, vol. 1, p. 222.

In *Walter W. Moyer*, 35 B. T. A. 1155, the Board held that the husband made his wife a coowner in his individual business by an irrevocable gift of an interest in the business. The Board held that the wife became a partner. Thereafter, she placed her interest in trust, which was an assertion of her rights of ownership. In this proceeding no transfer was made to a third party. The decedent continued to act as a partner, individually, in the same manner as he had prior to his declaration of trust. There was no assertion of any

right of ownership over property by a transferee as a result of the declaration of trust.

The situation here appears to be one which the Supreme Court might have had in mind in *Lucas* v. *Earl*, *supra*, when it stated that "There is no doubt that the statute could tax salaries to those who earned them and provide that the tax could not be escaped by anticipatory arrangements and contracts however skilfully devised to prevent the salary when paid from vesting even for a second in the man who earned it. That seems to us the import of the statute before us and we think that no distinction can be taken according to the motives leading to the arrangement by which the fruits are attributed to a different tree from that on which they grew." It is our opinion that the arrangement made by the decedent was anticipatory of the tax saving which he hoped would result, but that the things done were legally insufficient to accomplish the result desired. *Sam H. Harris*, 11 B. T. A. 871, affirming *Harris* v. *Commissioner* (C. C. A., 2d Cir.), 39 Fed. (2d) 546; *Bishop* v. *Commissioner* (C. C. A., 7th Cir.), 54 Fed. (2d) 298; *Balkwill* v. *Commissioner* (C. C. A., 6th Cir.), 77 Fed. (2d) 569; certiorari denied, 296 U. S. 609.

In *Luce* v. *Burnet* (D. C. App.), 55 Fed. (2d) 751, an attorney attempted to place one-half of his earnings from a law firm in trust for his wife. The court held that the fees earned by the taxpayer in the practice of his profession represented compensation for personal services and were taxable to him, no matter what arrangement existed between husband and wife. See also *Emery* v. *Commissioner* (C. C. A., 1st Cir.), 78 Fed. (2d) 437; *Daugherty* v. *Commissioner* (C. C. A., 9th Cir.), 63 Fed. (2d) 77.

Paraphrasing the Supreme Court's decision in the *Leininger* case, *supra*, the thing which produced the income was not decedent's entire interest in Miller, Gorham & Wales, but it was the firm enterprise itself, that is, the capital, labor, and skill of its members employed in combination through the partnership relation in the conduct of the partnership business. There was no transfer of the corpus of the partnership property to a new firm, with a consequent readjustment of rights in that property and management. The decedent continued to be a member of the firm, active in its behalf, and earned fees by rendering personal services to his clients. These earnings are taxable to him individually, as they represent compensation for personal services, and the tax thereon can not be shifted by a declaration of trust equivalent to an assignment of future income. *Carroll E. Donner et al., Guardians*, 32 B. T. A. 364; *Rossmoore* v. *Commissioner* (C. C. A., 2d Cir.), 76 Fed. (2d) 520.

We have decided this proceeding upon the theory most favorable to petitioners' contention, which is premised upon the validity of the

trust. In view of the recent decision of the Seventh Circuit in *Brainard* v. *Commissioner*, 91 Fed. (2d) 880, affirming 32 B. T. A. 1036, which held that a declaration of trust concerning expected profits from future trading in securities created no valid trust, it might be questioned whether the decedent created a valid trust, but we need not discuss this point in view of our decision that in any event the declaration of trust operated as an assignment of future income.

*Decision will be entered for the respondent.*